THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. LADRESHA F. BROWNLEE, Defendant-Appellee.

Fourth District    No. 4—96—0444

Opinion filed December 20, 1996.

Robert G. Kirchner, of Lerner & Kirchner, of Champaign, for appellee.

John C. Piland, State's Attorney, of Urbana (Norbert J. Goetten, Robert J. Biderman, and Leslie Hairston, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE STEIGMANN delivered the opinion of the court:

In November 1995, the State charged defendant, Ladresha F. Brownlee, with possession with intent to deliver a controlled substance (one gram or more but less than 15 grams of a substance containing cocaine) in violation of section 401(c)(2) of the Illinois Controlled Substances Act (720 ILCS 570/401(c)(2) (West 1994)). In December 1995, defendant filed a motion to suppress the evidence that was the basis for the charge against her. In January 1996, the trial court conducted a hearing on that motion and granted it. The State appeals, and we reverse and remand with directions.

## I. BACKGROUND

### A. The Evidence

At the January 1996 hearing on defendant's motion to suppress, the only witnesses to testify were Urbana police officers Carlos Guerrero and Duane Maxey. They both testified about events of November 7, 1995, which led to defendant's arrest. Their testimony, which was similar in most respects, was substantially as follows.

On the night in question, they were patrolling together in an Urbana police car on a special detail trying to find any illegal drug activity or illegal weapons. They drove into an area of Urbana known to have drug activity and specifically patrolled a certain housing complex. Shortly after 9 p.m., they observed a large white vehicle stop in front of a residence in that complex. The officers could not tell what the people were doing in the car. The officers proceeded past the car for about a block and then turned around and drove back. They then saw the white car leaving the area after it had been stopped at the residence for perhaps a minute. The officers followed the car and observed it come to a stop sign at an intersection where the car stopped about two feet past the stop sign but before it entered the cross street. The officers observed the car turn left but it signalled for a left turn just as it made that turn, as opposed to the requirement of the Illinois Vehicle Code that it signal 100 feet before turning. 625 ILCS 5/11—804(b) (West 1994). The officers then signalled for the car to pull over, which it did.

The officers approached the vehicle, one on each side, and recognized the driver. A male passenger also sat in the front seat, and two female passengers sat in the backseat. They asked defendant for identification "just to find out who she was." Officer Guerrero testified that it was common practice for his department to identify everyone in a vehicle under these circumstances. The officers also obtained identification from the other two passengers in the car. Af-

ter identifying all the vehicle's occupants, the officers returned to their automobile, where they checked to see if there were any outstanding warrants for any of them and found none.

Officer Maxey mentioned that he had seen an unopened bottle of beer in the car. They determined that they were not going to issue a citation to the driver for the traffic violations they had seen but would ask him if they could search the vehicle.

Officer Maxey also testified that he viewed the white vehicle with suspicion when he first saw it because it was in a neighborhood known to have drug activity and because "it's commonplace for an individual who wants to purchase drugs to pull up, run up to a home for just a moment, make a buy and leave."

Guerrero testified that when he went back to the white car, he returned the driver's license and insurance card to the driver and explained that he was not going to issue any citations. He then "paused a couple of minutes, and I asked [the driver] if I could search his vehicle." Guerrero had not told the driver that he could leave. When asked to be more specific about what Guerrero told the driver, Guerrero said, "I told him that we were concerned that there might be more alcohol in the car[,] and I just wanted permission to take a look inside the vehicle." The driver asked Guerrero if he had a choice of whether or not the police could search the vehicle. Guerrero responded, "I told him that he did have a choice, that I was not telling him I was going to search the vehicle, but I was asking him if I could search his vehicle." In response, according to Guerrero, the driver got out of the vehicle and said, "Okay, you can search the vehicle." The officers then ordered all the other occupants out of the vehicle but did not tell any of them that they were free to leave. Defendant exited from the driver's-side rear door.

The officers found an open bottle of beer in the backseat where defendant's feet had been. They also found a jacket in the front seat of the vehicle. The jacket was bundled up in the middle of the front seat between the driver and the passenger. The male passenger in the front seat was not wearing a jacket at the time the officers stopped the vehicle. When the officers lifted the jacket, they found two "blunts" on the seat. The officer described a "blunt" as a hollowed-out cigar in which marijuana is placed.

Officer Maxey explained that because (1) the blunts were within reach of all four individuals in the car, (2) none would claim ownership of the blunts, and (3) one of the occupants had said that all four individuals in the car had been smoking cannabis, the officers decided to arrest all four individuals. After defendant's arrest, the police searched her person and found the substance containing cocaine, which was the basis of the charge the State filed against her.

## B. The Arguments of Counsel

Based on the foregoing evidence, defendant argued that the trial court should suppress the evidence seized from defendant after her arrest because that arrest was unlawful. Defendant first argued that the testimony of the officers revealed the traffic violations the white car allegedly committed were just a pretext because the officers really wanted to stop the vehicle to search it for drugs and weapons. Defense counsel then argued the following:

"They go back to their squad car. They run a warrant check and find that none of them have any outstanding warrants. At that point Officer Guerrero told us under oath that he had decided they are not going to issue any citations for failing to signal more than a hundred feet before the intersection or for stopping 2 feet from the stop sign, but he said they had decided that they were going to try to get consent to search the vehicle just to see if there was anything there.

Under *Terry* and the cases which followed, even if that stop is justified, they have no right to further detain the vehicle to do an exploratory search just to see if something is there.

They then get, they claim, consent from the driver to search the vehicle. After he objects, they said, 'We are not telling you, we are just asking you for permission to do it.' They direct everyone out of the car, don't allow my client to leave, direct her where to stand. She's not free to leave."

Defendant further argued that the evidence before the officers at that time was insufficient to justify her arrest. She argued that an arrest is synonymous with seizure and that she had effectively been arrested in this case when ordered out of the car for a search.

Defendant then also argued as follows:

"Most relevant to the conduct of the officers in this case is *People vs. Sneed*, S-n-e-e-d, 274 Ill. App. 3d 274, *** in which the [c]ourt condemned the practice which we see here of detaining defendants while the police conduct an expedition for evidence in the hope that they may turn up something. And the specific language is this practice of detaining a defendant while the police conduct an expedition for evidence in hopes that something may turn up has been repeatedly condemned by the United States Supreme Court. And there's a series of citations.

I would also cite to the Court a case which is very analogous to this, and that's *State of Ohio vs. Chatten*, C-h-a-t-t-e-n, [a] Supreme Court of Ohio case[,] 463 N.E.2d 1237[,] and I cite that because it relies on the U.S. Supreme Court decision in *United States vs. Place*. And that case, this Ohio case, holds that when—and this is consistent with *Terry*—when there is a stop such as in this case of

a motor vehicle and the purpose of that stop has been satisfied \*\*\* as it was in this case in that they identified the occupants of the vehicle and had determined that they were not going to issue any citations to the driver, they don't have the right to then exert further influence and pressure and obtain a consent to a search of the vehicle. That's beyond the scope of what they are there for."

In response, the State argued that the traffic stops were legitimate and that the officer asked and received permission to search the vehicle. The State pointed out that the officers even clarified, in response to the driver's questions, that he did have a choice of whether to consent, and that the officers were merely asking for permission.

### C. The Trial Court's Remarks and Rulings

In response to these arguments, the trial court stated the following:

"THE COURT: Let me focus in on one aspect of this and ask you a question because you have discussed the consent. In the line of cases, and we know the line goes up to the U.S. Supreme Court, the case that [defense counsel] cited that the Ohio courts discussed, made it clear that, I think the line of cases make it clear, that once the reason for the initial stop has been satisfied or cleared in some way, let's assume for the sake of argument here that the Court could believe that there was no reasonable and articulable suspicion to go further after that—

[The prosecutor]: Okay.

THE COURT: —does that nevertheless still include the right to go back and ask for consent?

[The prosecutor]: I guess I don't understand why they couldn't have a right to ask for consent, your Honor.

THE COURT: But don't these cases, the line that [defense counsel] is discussing, and I think he's right when he says that the U.S. Supreme Court has again and again been very troubled by the type of situation where there's maybe a stop for a very, very minor traffic violation, there's perfect identification, there's an insurance card in this case, there [are] no warrants out. The basis for the stop has been satisfied at that point and there's no reasonable articulable suspicion to authorize a further detention and search.

Do you still have the right at that point, if the whole thing for all practical purposes is over at that stage, nevertheless, do you still have the right to say, go ahead, 'Can I search the car?' And if the person says yes, does that make it all right? Is that the law?

[The prosecutor]: I guess I'm not prepared to be definitive of the law.

THE COURT: [Defense counsel]?

[Defense counsel]: I don't have any further argument.

THE COURT: Okay."

After the above dialogue with counsel, the trial court made various findings, including the following:

"I don't think we have to get to the business of the blunts. I think the stop was okay. The officers satisfied themselves of the identity of the persons, that there were no warrants out.

Just based on the fact that it was a high drug area and the car had been in it, I think there are cases that hold that that's simply not enough to create a reasonable and articulable suspicion that there might be some other illegal activity or substance in the car. And it simply seems to me the kind of a case, when the officers testified they decided that as far as the traffic matters were concerned[,] it was clear there weren't going to be any citations, I simply think that line of cases and I think the kind of situation[ ] that the U.S. Supreme Court is talking about is in a situation like this where, in effect, the matter had been cleared as far as the traffic stop was concerned and there was nothing else to create any reasonable and articulable suspicion of any other illegal activity, I simply think, consent notwithstanding, I think you cannot go any further, and I'm going to allow the motion."

## II. ANALYSIS

■ The State argues on appeal that the trial court erred by granting defendant's motion to suppress. We note that the court's ruling is entitled to great deference, and this court will not disturb it on review unless we conclude it is against the manifest weight of the evidence. *People v. Garriott*, 253 Ill. App. 3d 1048, 1050, 625 N.E.2d 780, 782 (1993). However, where the facts are essentially uncontroverted, as here—and we add that we accept the factual findings made by the trial court—we can review the trial court's determination *de novo* as to what conclusions of law apply to the facts as found. *In re D.G.*, 144 Ill. 2d 404, 408-09, 581 N.E.2d 648, 649 (1991).

■ The State first claims that defendant lacks standing to challenge the validity of the search. However, the State did not make this argument to the trial court. The doctrine of waiver applies as strongly to the State as it does to defendants, and we are no more inclined to reverse the trial court based on an argument the State had not presented to it than we are to reverse on the basis of an argument the defendant had not presented. Accordingly, we hold the State waived its standing argument.

■ A review of the dialogue between the trial court and counsel at the hearing on the motion to suppress reveals that the trial court essentially accepted the argument defendant made regarding the cir-

cumstances in which the officers asked the driver for consent to search the white car. That argument—which defendant repeated in her brief to this court—is the following:

> "In *State of Ohio v. Robinette* (Ohio 1995)[, 73 Ohio St. 3d 650,] 653 N.E.2d 695, the Court held that the United States Constitution requires that citizens who are stopped for traffic offenses be clearly informed by the detaining officer, when they are free to go after a valid detention before an officer attempts to engage in any consensual interrogation and that any attempt at consensual interrogation must be preceded by the phrase, 'at this time you are legally free to go,' or words of similar import. The Court was concerned about officers turning routine traffic stops into fishing expeditions for unrelated criminal activity. The Court premised its holding under both the Constitutions of the United States and the State of Ohio."

A few weeks ago, the United States Supreme Court rendered its decision in *Ohio v. Robinette*, 519 U.S. ___, 136 L. Ed. 2d 347, 117 S. Ct. 417 (1996), the very case defendant cites to this court as justification for the trial court's ruling suppressing the evidence here. By a vote of seven justices in the majority, a concurring opinion, and a dissenting opinion, the United States Supreme Court reversed the Supreme Court of Ohio and rejected a *per se* rule requiring an officer to specifically inform a motorist that he is free to go before the officer can validly ask for consent to search the motorist's vehicle. *Robinette*, 519 U.S. at ___, 136 L. Ed. 2d at 354, 117 S. Ct. at 420-21. Citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 36 L. Ed. 2d 854, 93 S. Ct. 2041 (1973), the Court reaffirmed that the voluntariness of a consent to search remains a question of fact to be determined from all of the circumstances. The court specifically reaffirmed its holding in *Schneckloth* that " '[w]hile knowledge of the right to refuse consent is one factor to be taken into account, the government need not establish such knowledge as the *sine qua non* of an effective consent.' " *Robinette*, 519 U.S. at ___, 136 L. Ed. 2d at 355, 117 S. Ct. at 421, quoting *Schneckloth*, 412 U.S. at 227, 36 L. Ed. 2d at 863, 93 S. Ct. at 2048.

We note that other portions of *Robinette* address other issues defendant had raised in her motion to suppress. First, the Court reaffirmed its recent decision in *Whren v. United States*, 517 U.S. 806, 813, 135 L. Ed. 2d 89, 98, 116 S. Ct. 1769, 1774 (1996), that "the subjective intentions of the officer [who stopped the motor vehicle in question] did not make the continued detention of [the person stopped] illegal under the Fourth Amendment. '*** Subjective intentions play no role in ordinary, probable-cause Fourth Amendment

analysis.' " *Robinette*, 519 U.S. at ____, 136 L. Ed. 2d at 354, 117 S. Ct. at 420-21.

The Court also reaffirmed its earlier decision in *Pennsylvania v. Mimms*, 434 U.S. 106, 111, 54 L. Ed. 2d 331, 337, 98 S. Ct. 330, 333 (1977), that once a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle without violating the fourth amendment's proscription of unreasonable searches and seizures.

In this case, the trial court reached a legal conclusion—consistent with defendant's argument—that the Supreme Court of Ohio in *Robinette* was correct in holding that an officer may not ask for consent when the traffic stop has been completed unless the officer first specifically informs the driver that he is free to go. We reverse that conclusion in light of the United States Supreme Court's decision in *Robinette* overruling the Supreme Court of Ohio.

We share the concerns the trial court expressed in this case, and in view of the ever-increasing instances of claimed consents to search given by drivers in circumstances like the one in the present case, we understand why the trial court, the Supreme Court of Ohio, and other courts have thought that requiring an officer to tell the detained driver that he is free to go before the officer may ask consent to search his vehicle might be appropriate to further important fourth amendment protections. We also note that the United States Supreme Court in *Robinette* made clear that it was not passing upon the wisdom of such a requirement, just whether the United States Constitution required it. The Court held that the federal constitution did not, which still leaves the State of Illinois free to impose such a requirement if it wishes. However, the policy judgment underlying the imposition of such a requirement should be made either by the Illinois legislature or our supreme court; neither this court nor a trial court should take it upon itself to impose a rule regarding police conduct that would have such significant consequences.

## III. CONCLUSION

For the reasons stated, we reverse the judgment of the trial court granting defendant's motion to suppress, and we remand for further proceedings consistent with the views expressed herein.

Reversed and remanded with directions.

GARMAN and KNECHT, JJ., concur.