THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. LADRESHA F. BROWNLEE, Defendant-Appellee.

Fourth District    No. 4—96—0444

Opinion filed December 8, 1997.

John C. Piland, State's Attorney, of Urbana (Norbert J. Goetten, Robert J. Biderman, Leslie Hairston, and Thomas R. Dodegge, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Robert G. Kirchner, of Lerner & Kirchner, of Champaign, for appellee.

JUSTICE STEIGMANN delivered the opinion of the court:

In November 1995, the State charged defendant, Ladresha F. Brownlee, with possession with intent to deliver a controlled substance (1 gram or more but less than 15 grams of a substance containing cocaine) in violation of section 401(c)(2) of the Illinois Controlled Substances Act (720 ILCS 570/401(c)(2) (West 1994)). In December 1995, defendant filed a motion to suppress the evidence that was the basis for the charge against her. In January 1996, the trial court conducted a hearing on that motion and granted it.

The State appealed the suppression order, and this court reversed and remanded with directions. *People v. Brownlee*, 285 Ill. App. 3d 432, 674 N.E.2d 503 (1996) (*Brownlee*). Defendant filed a petition for leave to appeal, which the supreme court denied. However, in the exercise of that court's supervisory authority, it vacated this court's judgment and remanded with directions that we "consider the defendant's argument regarding the Illinois Constitution." *People v. Brownlee*, 172 Ill. 2d 555, 556, 678 N.E.2d 1048, 1048-49 (1997).

In accordance with the supreme court's directions, we have considered anew defendant's argument regarding the Illinois Constitution. For the reasons that follow, we adhere to our earlier decision, reversing the trial court and remanding with directions.

# I. BACKGROUND

The facts pertinent to this appeal are set forth in *Brownlee*, (285 Ill. App. 3d at 433-34, 674 N.E.2d at 504-05) and require only brief restatement here. Essentially, they show that on the night in question, two Urbana police officers stopped a car containing four occupants for a minor traffic violation. The officers noted that the car had been driven in a suspicious fashion in an area the officers knew had drug activity.

After the officers spoke to the car's occupants, determined that none had any outstanding arrest warrants, and decided not to issue any traffic tickets, one of the officers "paused a couple of minutes, and [he] asked [the driver] if [he] could search his vehicle." The officer had not told the driver that he could leave. After further discussion, the driver consented to the search. During this search, the officers found some marijuana and arrested all of the car's occupants. After the officers arrested defendant (who was a backseat passenger), they searched her purse and found the substance containing cocaine, which was the basis of the charge the State filed against her.

■ Defendant filed a motion to suppress and argued that the trial court should follow a decision from the Ohio Supreme Court that the State on appeal appropriately terms the "first-tell-then-ask" rule. This rule states that when the police stop a car and later determine that they are not going to issue any traffic tickets to the driver (or, alternatively, have completed the process of issuing those tickets), they may not ask for the driver's consent to search the car until they have first told the detained driver that he is free to drive away. The trial court granted defendant's motion to suppress, and this appeal followed.

# II. ANALYSIS

## A. Federal Constitutional Search and Seizure Provisions

■ In *Brownlee*, we analyzed defendant's motion to suppress in the context of the fourth amendment to the federal constitution (U.S. Const., amend. IV). Defendant had argued to this court that the fourth amendment required that motorists who are stopped for traffic offenses be clearly informed by the detaining officer when they are free to go before the officer attempts to engage in any further questioning or to seek consent to search the car. Defendant argued that the officer must first say to the driver, "At this time you are legally free to go," or words to that effect.

In support of her argument, defendant cited the decision of the Ohio Supreme Court in *State v. Robinette*, 73 Ohio St. 3d 650, 653 N.E.2d 695 (1995). However, in *Brownlee*, this court noted that dur-

ing the appeal from the suppression order in this case, the United States Supreme Court rendered its decision in *Ohio v. Robinette*, 519 U.S. 33, 36-40, 136 L. Ed. 2d 347, 353-55, 117 S. Ct. 417, 420-21 (1996), and reversed

> "the very case defendant cites to this court as justification for the trial court's ruling suppressing the evidence here. *** [Thus, the Court] reversed the Supreme Court of Ohio and rejected a *per se* rule requiring an officer to specifically inform a motorist that he is free to go before the officer can validly ask for consent to search the motorist's vehicle." *Brownlee*, 285 Ill. App. 3d at 438, 674 N.E.2d at 507.

We reaffirm our holding in *Brownlee* that the fourth amendment to the federal constitution does not require a police officer to tell a stopped motorist that he is free to go before the officer may ask the motorist for consent to search his vehicle.

### B. State Constitutional Search and Seizure Provisions

We now address whether the prohibition against unreasonable searches and seizures contained within the Illinois Constitution requires the "first-tell-then-ask" rule (Ill. Const. 1970, art. I, § 6). For the following reasons, we hold that it does not.

Our analysis of whether the Illinois Constitution provides greater protections than the fourth amendment to the federal constitution begins with a comparison of the language in each. The fourth amendment, in pertinent part, reads as follows: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const., amend. IV. The analogous provision of the Illinois Constitution reads, in pertinent part, as follows: "The people shall have the right to be secure in their persons, houses, papers and other possessions against unreasonable searches, seizures, invasions of privacy or interceptions of communications by eavesdropping devices or other means." Ill. Const. 1970, art. I, § 6.

In *People v. Krueger*, 175 Ill. 2d 60, 65, 675 N.E.2d 604, 607 (1996), the supreme court analyzed these provisions and wrote the following: "The language of the two constitutional provisions concerning unreasonable searches and seizures is nearly identical." This similarity in language no doubt accounts in large measure for the inclination of the Supreme Court of Illinois in construing provisions of our state constitution to follow decisions of the United States Supreme Court construing similar provisions of the federal constitution. See *People v. Tisler*, 103 Ill. 2d 226, 242, 469 N.E.2d 147, 156 (1984).

In *Tisler*, the supreme court rejected the defendant's argument that the Supreme Court of Illinois should not follow the lead of the

United States Supreme Court in *Illinois v. Gates*, 462 U.S. 213, 76 L. Ed. 2d 527, 103 S. Ct. 2317 (1983), which held that a judge should look at the totality of the circumstances when assessing an affidavit that relies on an informant's account. The defendant argued that the Supreme Court of Illinois should instead adhere to the earlier, two-pronged test of *Aguilar v. Texas*, 378 U.S. 108, 114-15, 12 L. Ed. 2d 723, 729, 84 S. Ct. 1509, 1514 (1964), which the United States Supreme Court abandoned in *Gates*. In support of this argument, the defendant asserted that the drafters of article I, section 6, of the 1970 Illinois Constitution intended to expand the right of Illinois citizens to be free from unreasonable police conduct and thereby to provide greater protections for our citizens from government intrusion than that provided by the federal constitution. *Tisler*, 103 Ill. 2d at 241, 469 N.E.2d at 155.

After carefully considering the respective language of both constitutional provisions and the proceedings of the Sixth Illinois Constitutional Convention (from which the 1970 Illinois Constitution came), the supreme court rejected the defendant's argument, noting:

> "The [constitutional] convention manifested no intent to expand the nature of the protection afforded by the fourth amendment of the Federal Constitution. *** Both constitutional provisions were designed to protect against the same abuses. [Citation.] The difference in the language of the 1970 Constitution from that found in the 1870 [Illinois] Constitution and the fourth amendment of the Federal Constitution *** does no more than specifically provide for fourth amendment protection with regard to eavesdropping and invasion of privacy." *Tisler*, 103 Ill. 2d at 242, 469 N.E.2d at 155-56.

The supreme court in *Tisler* also wrote the following (which is particularly pertinent for the issue before us):

> "Any variance between the Supreme Court's construction of the provisions of the fourth amendment in the Federal Constitution and similar provisions in the Illinois Constitution must be based on more substantial grounds [than those argued by the defendant]. We must find in the language of our constitution, or in the debates and the committee reports of the constitutional convention, something which will indicate that the provisions of our constitution are intended to be construed differently than are similar provisions in the Federal Constitution, after which they are patterned." *Tisler*, 103 Ill. 2d at 245, 469 N.E.2d at 157.

In *People v. Mitchell*, 165 Ill. 2d 211, 650 N.E.2d 1014 (1995), the supreme court addressed whether the "plain touch" doctrine recognized by the United States Supreme Court in *Minnesota v. Dickerson*, 508 U.S. 366, 124 L. Ed. 2d 334, 113 S. Ct. 2130 (1993), violates

article I, section 6, of the Illinois Constitution, and the court concluded as follows:

"In light of this court's stated election to construe our section 6 guarantees consistently with the Supreme Court's interpretation of the fourth amendment, the answer to the question [before] us seems clear. The 'plain touch' doctrine does not violate our section 6 guarantees." *Mitchell*, 165 Ill. 2d at 222, 650 N.E.2d at 1020.

Before so concluding, the court addressed the defendant's assertion that it was not required to follow the United States Supreme Court's interpretation of federal protections in "lockstep." The Supreme Court of Illinois acknowledged that this was so and that it had often stated that it could construe provisions of the Illinois Constitution to provide more expansive protections than the comparable federal constitutional provisions. *Mitchell*, 165 Ill. 2d at 217, 650 N.E.2d at 1017. The court noted, however, that certain judicially crafted limitations define the exercise of that right, and it then referred to *Tisler* approvingly, as follows:

"Consistent with *Tisler*, we find nothing, either in the language of [section 6] or in the debates, to support a divergence in interpretation of our section 6 search and seizure clause from the Federal fourth amendment interpretation. Indeed, the court in *Tisler* stated that after having accepted the pronouncements of the Supreme Court in deciding fourth amendment cases as the appropriate construction of the search and seizure provisions of the Illinois [C]onstitution for so many years, absent some *substantial grounds*, we should not suddenly change course." (Emphasis in original.) *Mitchell*, 165 Ill. 2d at 219, 650 N.E.2d at 1018.

*Krueger* appears to be the only departure by the supreme court from the lockstep doctrine. In that case, the supreme court ruled that the Illinois no-knock statute (725 ILCS 5/108—8(b)(2) (West 1994)) was unconstitutional and then had to consider whether to apply the good-faith exception to the exclusionary rule established by the United States Supreme Court in *Illinois v. Krull*, 480 U.S. 340, 94 L. Ed. 2d 364, 107 S. Ct. 1160 (1987), to the seized evidence. In *Krull*, the Supreme Court had held that the exclusionary rule did not apply to evidence seized in good-faith reliance on a statute which was later found to be unconstitutional. The Supreme Court of Illinois elected not to follow that holding, although it acknowledged "that this court has long applied the lockstep doctrine to follow Supreme Court decisions in fourth amendment cases," citing *Tisler*. *Krueger*, 175 Ill. 2d at 74, 675 N.E.2d at 611. However, in choosing not to apply the lockstep doctrine in *Krueger*, the supreme court noted that to adopt the holding of the United States Supreme Court would drastically change this state's constitutional law, which contained an exclusionary rule

over 70 years old that had "always been understood to bar evidence gathered under the authority of an unconstitutional statute." *Krueger*, 175 Ill. 2d at 74, 675 N.E.2d at 612, citing *People v. Brocamp*, 307 Ill. 448, 138 N.E. 728 (1923).

Further, the Supreme Court of Illinois implied that the United States Supreme Court's holding in *Krull* may have been fundamentally flawed. Noting that it was "obliged to evaluate the rationale underlying *Krull* in determining whether to adopt its extended good-faith exception for purposes of the exclusionary rule arising out of our state constitution," the supreme court wrote that the opinion in *Krull* had been decided by a "bare majority" and that Justice O'Conner's dissent revealed several serious flaws in the majority decision. *Krueger*, 175 Ill. 2d at 70, 72.

The supreme court in *Krueger* also pointed out that "several fourth amendment scholars have severely criticized *Krull*," and "[o]ur own appellate court has determined that the *Krull* good-faith exception violates the Illinois Constitution." *Krueger*, 175 Ill. 2d at 76, 675 N.E.2d at 612.

None of the concerns expressed by the supreme court in *Krueger* as a reason for not following the lockstep doctrine applies to the present case. Nothing about the United States Supreme Court's decision in *Robinette* suggests that it was somehow fundamentally flawed. Further, all of the United States Supreme Court justices concluded that the federal constitution did not mandate the adoption of the "first-tell-then-ask" rule, including Justice Stevens in his dissent. *Robinette*, 519 U.S. at 45, 136 L. Ed. 2d at 358, 117 S. Ct. at 425 (Stevens, J., dissenting). Last, following the United States Supreme Court's decision in *Robinette* would violate no well-settled Illinois constitutional law.

We also note that earlier this year, the Supreme Court of Illinois reaffirmed its intention to interpret the double jeopardy provision of the Illinois Constitution (Ill. Const. 1970, art. I, § 10) "in a manner that is consistent with the United States Supreme Court's interpretation of the double jeopardy clause of the fifth amendment." *In re P.S.*, 175 Ill. 2d 79, 89, 676 N.E.2d 656, 661 (1997). The majority opinion in *In re P.S.* responded to two dissenting opinions—that claimed that the drafters of the Illinois Constitution must have intended the provisions of the state Bill of Rights to supplement the United States Constitution and to stand as an additional protection against governmental overarching—by writing the following:

> "The dissent apparently believes that the mere inclusion of a particular guarantee in the state Bill of Rights, without more, demonstrates that the provision means something different from

the corresponding provision of the Bill of Rights of the United States Constitution. This approach leads to the conclusion that similar provisions of the federal and state constitutions mean different things, even though they are expressed in the same terms. Under this view, the Illinois drafters did not adopt well-established meanings when they used familiar words and phrases but instead always meant something different. Notably, the dissenting opinion offers no citation to the proceedings of the 1970 constitutional convention in support of this novel theory.

In any event, this case is not an appropriate vehicle for a reassessment of the lockstep doctrine ***." *In re P.S.*, 175 Ill. 2d at 90, 676 N.E.2d at 661-62.

## III. EPILOGUE

We conclude as we did in *Brownlee* by stating that we share the concerns the trial court expressed in this case. In view of the ever-increasing instances of claimed consents to search given by drivers in circumstances like those present here, we understand why the trial court, the Supreme Court of Ohio, and other courts have thought that requiring an officer to tell the detained driver that he is free to go before the officer may ask consent to search his vehicle might be appropriate to further important fourth amendment protections. We repeat, however, that the policy judgment underlying the imposition of such a requirement should be made either by the Illinois legislature or our supreme court.

## IV. CONCLUSION

For the reasons stated, we reverse the trial court's judgment granting defendant's motion to suppress, and we remand for further proceedings consistent with the views expressed herein.

Reversed and remanded with directions.

GARMAN and KNECHT, JJ., concur.