NO. 4-96-0444

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

THE PEOPLE OF THE STATE OF ILLINOIS, ) Appeal from

Plaintiff-Appellant, ) Circuit Court of

v. ) Champaign County

LADRESHA F. BROWNLEE, ) No. 95CF1336

Defendant-Appellee. )

) Honorable

) Harold L. Jensen,

) Judge Presiding.

_________________________________________________________________

JUSTICE STEIGMANN delivered the opinion of the court:

In November 1995, the State charged defendant, Ladresha F. Brownlee, with possession with intent to deliver a controlled substance (1 gram or more but less than 15 grams of a sub­stance containing cocaine) in violation of section 401(c)(2) of the Illinois Controlled Substances Act (720 ILCS 570/401(c)(2) (West 1994)).  In December 1995, defendant filed a motion to suppress the evidence that was the basis for the charge against her.  In January 1996, the trial court conducted a hearing on that motion and granted it.  

The State appealed the suppression order, and this court reversed and remanded with direc­tions.  
People v. Brownlee
, 285 Ill. App. 3d 432, 674 N.E.2d 503 (1996) (
Brownlee
).  Defen­dant filed a petition for leave to appeal, which the supreme court denied.  However, in the exercise of that court's supervi­sory authority, it vacated this court's judgment and remanded with directions that we "consider the defendant's argument regarding the Illinois Constitution."  
People v. Brownlee
, 172 Ill. 2d 555, 678 N.E.2d 1048-49 (1997).

In accordance with the supreme court's directions, we have considered anew defendant's argu­ment regard­ing the Illi­nois Constitution.  For the reasons that follow, we adhere to our earlier decision, reversing the trial court and remanding with directions.  

I. BACKGROUND

The facts pertinent to this appeal are set forth in 
Brownlee
, (285 Ill. App. 3d at 433-34, 674 N.E.2d at 504-05) and require only brief restatement here.  Essentially, they show that on the night in question, two Urbana police officers stopped a car containing four occupants for a minor traffic violation.  The officers noted that the car had been driven in a suspicious fashion in an area the officers knew had drug activity.  

After the officers spoke to the car's occupants, determined that none had any outstanding arrest warrants, and decided not to issue any traffic tickets, one of the offi­cers "paused a couple of minutes, and [he] asked [the driver] if [he] could search his vehicle."  The officer had not told the driver that he could leave.  After further discus­sion, the driver consented to the search.  During this search, the officers found some marijua­na and arrested all of the car's occupants.  After the officers arrested defendant (who was a backseat passen­ger), they searched her purse and found the substance con­taining cocaine, which was the basis of the charge the State filed against her.

Defendant filed a motion to suppress and argued that the trial court should follow a decision from the Ohio Supreme Court that the State on appeal appropriately terms the "first-tell-then-ask" rule.  This rule states that when the police stop a car and later determine that they are not going to issue any traffic tickets to the driver (or, alternatively, have completed the process of issuing those tickets), they may not ask for the driver's consent to search the car until they have first told the detained driver that he is free to drive away.  The trial court granted defendant's motion to sup­press, and this appeal followed.   II. ANALYSIS

A. Federal Constitutional Search and Seizure Provisions

In 
Brownlee
, we ana­lyzed defendant's motion to sup­press in the context of the fourth amendment to the federal consti­tu­tion (U.S. Const., amend. IV).  Defen­dant had argued to this court that the fourth amendment re­quired that motorists who are stopped for traffic offenses be clearly informed by the detaining offi­cer when they are free to go before the officer attempts to engage in any further questioning or to seek consent to search the car.  Defendant argued that the officer must first say to the driver, "At this time you are legally free to go," or words to that effect.    

In sup­port of her argument, defen­dant cited the deci­sion of the Ohio Supreme Court in 
State v. Robinette
, 73 Ohio St. 3d 650, 653 N.E.2d 695 (1995).  Howev­er, in 
Brownlee
, this court noted that during the appeal from the suppression order in this case, 
the United States Supreme Court ren­dered its deci­sion in 
Ohio v. Robinette
, 519 U.S. ____, ____, 136 L. Ed. 2d 347, 353-55, 117 S. Ct. 417, 420-21 (1996), and reversed 

"the very case defendant cites to this court as justi­fi­cation for the trial court's ruling suppressing the evidence here.  ***  [Thus, the Court] reversed the Supreme Court of Ohio and re­ject­ed a 
per
 
se
 rule requiring an offi­cer to specifically inform a motorist that he is free to go be­fore the officer can validly ask for consent to search the motorist's vehi­cle."  
Brownlee
, 285 Ill. App. 3d at 438, 674 N.E.2d at 507.

We reaffirm our holding in 
Brownlee
 that the fourth amendment to the federal constitu­tion does not require a police officer to tell a stopped motorist that he is free to go before the officer may ask the motorist for consent to search his vehicle.  

B. State Constitutional Search and Seizure Provisions

We now address whether the prohibition against unrea­sonable searches and sei­zures contained within the Illinois Constitu­tion requires the "first-tell-then-ask" rule (Ill. Const. 1970, art. 1, §6).  For the following reasons, we hold that it does not.

Our analysis of whether the Illinois Constitution provides greater protections than the fourth amendment to the federal constitution begins with a comparison of the lan­guage in each.
  The fourth amendment, in pertinent part, reads as fol­lows:  "The right of the peo­ple to be se­cure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated."  U.S. Const., amend. IV.  The analo­gous provision of the Illinois Constitution reads, in pertinent part, as follows:  "The people shall have the right to be secure in their persons, houses, papers and other posses­sions against unreasonable searches, seizures, invasions of privacy or inter­ceptions of communications by eavesdropping devices or other means."  Ill. Const. 1970, art. I, §6.

In 
People v. Krueger
, 175 Ill. 2d 60, 65, 675 N.E.2d 604, 607 (1996), the supreme court analyzed these provi­sions and wrote the following:  "The language of the two consti­tutional provisions concerning unreasonable searches and seizures is nearly identical."  This similarity in language no doubt ac­counts in large measure for the inclination of the Supreme Court of Illinois in construing provisions of our state constitution to follow decisions of the United States Supreme Court con­struing similar provisions of the federal constitution.  See 
People v. Tisler
, 103 Ill. 2d 226, 242, 469 N.E.2d 147, 156 (1984).  

In 
Tisler
, the supreme court rejected the defendant's argument that the Supreme Court of Illinois should not follow the lead of the United States Supreme Court in 
Illinois v. Gates
, 462 U.S. 213, 76 L. Ed. 2d 527, 103 S. Ct. 2317 (1983), which held that a judge should look at the totality of the circumstances when assessing an affidavit that relies on an informant's ac­count.  The defendant argued that the Supreme Court of Illi­nois should instead adhere to the earli­er, two-pronged test of 
Aguilar v. Texas
, 378 U.S. 108, 114-15, 12 L. Ed. 2d 723, 729, 84 S. Ct. 1509, 1514 (1964), which the United States Supreme Court aban­doned in 
Gates
.  In support of this argument, the defendant assert­ed that the drafters of article I, section 6, of the 1970 Illi­nois Constitution intended to expand the right of Illinois citizens to be free from unrea­son­able police conduct and thereby to provide greater protections for our citizens from government intrusion than that provided by the federal consti­tu­tion.  
Tisler
, 103 Ill. 2d at 241, 469 N.E.2d at 155.

After carefully considering the respective language of both constitutional provisions and the proceedings of the Sixth Illinois Constitutional Convention (from which the 1970 Illi­nois Constitution came), the supreme court rejected the defendant's argu­ment, noting: 

"The [constitutional] convention manifest­ed no intent to expand the nature of the protec­tion afforded by the fourth amendment of the Federal Constitution.  ***  Both con­sti­tu­tional provisions were designed to pro­tect against the same abuses.  [Citation.]  The difference in the language of the 1970 Con­stitution from that found in the 1870 [Illi­nois] Con­sti­tution and the fourth amend­ment of the Feder­al Constitution *** does no more than specif­ically provide for fourth amend­ment protec­tion with regard to eaves­dropping and inva­sion of privacy."  
Tisler
, 103 Ill. 2d at 242, 469 N.E.2d at 155-56.

The supreme court in 
Tisler
 also wrote the following (which is partic­ularly perti­nent for the issue before us):

"Any variance between the Supreme Court's construction of the provisions of the fourth amendment in the Federal Constitution and similar provisions in the Illinois Constitu­tion must be based on more substantial grounds [than those argued by the defendant].  We must find in the lan­guage of our constitu­tion, or in the de­bates and the com­mittee reports of the con­stitu­tional con­ven­tion, something which will indi­cate that the provi­sions of our constitu­tion are in­tended to be construed differently than are similar provi­sions in the Federal Consti­tu­tion, after which they are pat­terned."  
Tisler
, 103 Ill. 2d at 245, 469 N.E.2d at 157.

In 
People v. Mitchell
, 165 Ill. 2d 211, 650 N.E.2d 1014 (1995), the supreme court addressed whether the "plain touch" doctrine recognized by the United States Supreme Court in 
Minne­sota v. Dickerson
, 508 U.S. 366, 124 L. Ed. 2d 334, 113 S. Ct. 2130 (1993), violates article I, section 6, of the Illinois Consti­tution, and the court concluded as follows:  

"In light of this court's stated elec­tion to construe our section 6 guarantees consistent­ly with the Supreme Court's inter­pretation of the fourth amendment, the answer to the ques­tion [before] us seems clear.  The 'plain touch' doctrine does not violate our section 6 guarantees."  
Mitchell
, 165 Ill. 2d at 222, 650 N.E.2d at 1020.  

Before so concluding, the court addressed the defendant's asser­tion that it was not required to follow the United States Supreme Court's interpretation of federal protections in "lockstep."  The Supreme Court of Illinois acknowledged that this was so and that it had often stated that it could construe provisions of the Illi­nois Consti­tution to provide more expansive protections than the comparable federal constitutional provisions.  
Mitchell
, 165 Ill. 2d at 217, 650 N.E.2d at 1017.  The court noted, howev­er, that certain judicial­ly crafted limitations define the exercise of that right, and it then referred to 
Tisler
 approving­ly, as fol­lows:

"Consistent with 
Tisler
, we find noth­ing, either in the language of [section 6] or in the debates, to support a diver­gence in interpretation of our section 6 search and seizure clause from the Federal fourth amend­ment interpretation.  Indeed, the court in 
Tisler
 stated that after having accepted the pronouncements of the Supreme Court in decid­ing fourth amendment cases as the appropriate construction of the search and seizure provi­sions of the Illinois [C]on­stitution for so many years, absent some 
substantial
 
grounds
, we should not suddenly change course."  (Em­phasis in original.)  
Mitchell
, 165 Ill. 2d at 219, 650 N.E.2d at 1018. 

Krueger
 appears to be the only departure by the supreme court from the lockstep doctrine.  In that case, the supreme court ruled that the Illinois no-knock statute (725 ILCS 5/108-8(b)(2) (West 1994)) was uncon­stitu­tion­al and then had to consid­er whether to apply the good-faith excep­tion to the exclusionary rule estab­lished by the United States Supreme Court in 
Illinois v. Krull
, 480 U.S. 340, 94 L. Ed. 2d 364, 107 S. Ct. 1160 (1987), to the seized evidence.  In 
Krull
, the Supreme Court had held that the exclusionary rule did not apply to evidence seized in good-faith reliance on a statute which was later found to be unconstitu­tional.  The Supreme Court of Illi­nois elected not to follow that holding, although it acknowledged "that this court has long applied the lockstep doctrine to follow Supreme Court decisions in fourth amendment cases," citing 
Tisler
.  
Krueger
, 175 Ill. 2d at 74, 675 N.E.2d at 611.  However, in choosing not to apply the lockstep doctrine in 
Krueger
, the supreme court noted that to adopt the holding of the United States Supreme Court would drastically change this state's constitutional law, which contained an exclusionary rule over 70 years old that had "always been understood to bar evidence gathered under the authority of an unconstitutional statute."  
Krueger
, 175 Ill. 2d at 74, 675 N.E.2d at 612, citing 
People v. Brocamp
, 307 Ill. 448, 138 N.E 728 (1923).  

Further, the Supreme Court of Illinois implied that the United States Supreme Court's holding in 
Krull
 may have been fundamentally flawed.  Noting that it was "obliged to evaluate the rationale underlying 
Krull
 in determining whether to adopt its extended good-faith exception for purposes of the exclusionary rule arising out of our state constitution," the supreme court wrote that the opinion in 
Krull
 had been decided by a "bare majority" and that Justice O'Conner's dissent revealed several serious flaws in the majority decision.  
Krueger
, 175 Ill. 2d at 70, 72, 675 N.E.2d at 610.

The supreme court in 
Krueger
 also pointed out that "sever­al fourth amendment scholars have severely criticized 
Krull
," and "[o]ur own appellate court has determined that the 
Krull
 good-faith exception violates the Illinois Constitution."  
Krueger
, 175 Ill. 2d at 76, 675 N.E.2d at 612.

None of the concerns expressed by the supreme court in 
Krueger
 as a reason for not following the lockstep doctrine applies to the present case.  Nothing about the United States Supreme Court's decision in 
Robinette
 suggests that it was somehow funda­mentally flawed.  Further, all of the United States Supreme Court justic­es concluded that the federal constitution did not mandate the adoption of the "first-tell-then-ask" rule, including Justice Stephens in his dissent.  
Robinette
, 519 U.S. at ____, 136 L.Ed.2d at 358, 117 S. Ct. at 425 (Stephens, J., dissent­ing).  Last, following the United States Supreme Court's decision in 
Robinette
 would violate no well-settled Illi­nois consti­tution­al law
.

We also note that earlier this year, the Supreme Court of Illinois reaffirmed its intention to interpret the double jeopar­dy provision of the Illinois Constitution (Ill. Const. 1970, art. I, §10) "in a manner that is consistent with the United States Supreme Court's interpretation of the double jeopardy clause of the fifth amendment."  
In re P.S.
, 175 Ill. 2d 79, 89, 676 N.E.2d 656, 661 (1997).  The major­ity opinion in 
In re P.S.
 responded to two dis­senting opinions--that claimed that the draft­ers of the Illinois Constitution must have intended the provisions of the state Bill of Rights to supplement the United States Con­stitution and to stand as an addi­tional pro­tection against governmental overarching--by writing the fol­lowing:  

"The dissent apparently believes that the mere inclusion of a particular guarantee in the state Bill of Rights, without more, dem­onstrates that the provision means some­thing different from the corresponding provi­sion of the Bill of Rights of the United States Con­stitution.  This approach leads to the con­clusion that similar provisions of the feder­al and state constitutions mean differ­ent things, even though they are expressed in the same terms.  Under this view, the Illi­nois drafters did not adopt well-established mean­ings when they used familiar words and phras­es but instead always meant something differ­ent.  Notably, the dissenting opinion offers no citation to the proceedings of the 1970 con­stitutional convention in support of this novel theory.

In any event, this case is not an appro­priate vehicle for a reassessment of the lockstep doctrine ***."  
In re P.S.
, 175 Ill. 2d at 90, 676 N.E.2d at 661-62. 

III. EPILOGUE

We conclude as we did in 
Brownlee
 by stating that we share the concerns the trial court expressed in this case.  In view of the ever-increasing instances of claimed consents to search given by drivers in circumstances like those present here, we understand why the trial court, the Supreme Court of Ohio, and other courts have thought that requiring an officer to tell the detained driver that he is free to go before the officer may ask consent to search his vehicle might be appropriate to further important fourth amendment protections.  We repeat, however, that the policy judgment underlying the imposition of such a require­ment should be made either by the Illinois legislature or our supreme court.    

IV. CONCLUSION

For the reasons stated, we reverse the trial court's judgment granting defendant's motion to sup­press, and we remand for further proceedings consistent with the views ex­pressed herein.

Reversed and remanded with directions.

GARMAN and KNECHT, JJ., concur.