514 S.E.2d 332

The STATE, Respondent,

v.

Burnella FORRESTER, Appellant.

No. 2943.

Court of Appeals of South Carolina.

Heard Jan. 14, 1999.

Decided Feb. 16, 1999.

Rehearing Denied March 27, 1999.

568

Senior Assistant Appellate Defender Wanda H. Haile, of Office of Appellate Defense, of Columbia, for appellant.

Attorney General Charles Molony Condon, Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, Assistant Attorney General Harold M. Coombs, both of Columbia; and Solicitor Dudley Saleeby, Jr., of Florence, for respondent.

HEARN, Judge:

A jury convicted Burnella Forrester of trafficking in crack cocaine, and the trial judge sentenced Forrester to twenty-five years in prison and a $200,000 fine. Forrester appeals. We affirm.

## FACTUAL/PROCEDURAL BACKGROUND

Officer Allen Rhodes of the Florence County Police Department testified that on August 13, 1995, he was monitoring the Amtrak train station in Florence as part of his duties on the Florence Interdiction Strike Team. Rhodes reached the train station at approximately 10:05 p.m., shortly after the arrival of a train which originated in Miami, Florida.

As Rhodes drove up to the station, he observed two people he later determined were Forrester and her son standing in front of the station with their luggage. Forrester avoided contact with Rhodes and hurriedly left the station.

Rhodes caught up with them at a nearby Burger King and sat down beside them. Rhodes then showed Forrester his badge and asked to speak with her, and she agreed. According to Rhodes, Forrester then consented to his request to search her luggage and purse, and the three of them stepped outside.

Rhodes began to search Forrester's luggage, but he noticed that Forrester was clutching her purse in what he considered to be a suspicious manner. He asked her to open the purse, but she claimed there was nothing inside it. According to Rhodes, he asked if he could look inside, and she held the purse open. There appeared to be nothing inside other than a piece of tissue and some cardboard, but Rhodes noticed that from the outside the bag appeared to be bulging. Rhodes felt a hard substance on the inside of the bag, and as he looked closely, he saw a rip in the lining from which plastic protruded. Rhodes removed the contents and confiscated eleven packages of crack cocaine cookies from Forrester's purse, totaling 852.4 grams.

Forrester and her son offered a conflicting account of the facts. They testified that Rhodes ordered them outside, that she never consented to a search of the pocketbook, and that Rhodes snatched the purse from her arm and searched it.

At trial, Forrester's attorney made a motion to suppress the crack cocaine found in Forrester's purse. Forrester argued that the prohibition against unreasonable invasions of privacy in the South Carolina Constitution required suppression of the evidence. Specifically, Forrester argued that the state constitution provides greater protection than the Fourth Amendment to the U.S. Constitution because it expressly mentions "unreasonable invasions of privacy." Forrester also argued that before police can execute a consensual search, they must, in a *Miranda*[1]-style warning, affirmatively inform citizens of their right to refuse consent. The trial judge noted that there is no authority directly construing this privacy provision of the South Carolina Constitution and denied the motion to suppress, finding that the search was consensual.

---

1. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

## DISCUSSION

 The sole issue on appeal is whether the South Carolina Constitution's express protection against unreasonable invasions of privacy mandates that citizens be affirmatively informed of their right to refuse consent to a search.[2]

 Our analysis of whether the South Carolina Constitution requires a police officer performing a search to affirmatively inform a suspect of the right to refuse consent begins with an examination of federal law. The Fourth Amendment, in pertinent part, reads as follows:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. Under the Fourth Amendment, a valid search or seizure may be made without a warrant where the accused consents. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). Furthermore, there is no requirement that the police officer conducting a search inform the suspect of the right to refuse consent to search. *Id.* at 231–33, 93 S.Ct. 2041. Rather, the lack of such warning is only one factor to be considered in determining the voluntary nature of the consent. *Id.* at 227, 93 S.Ct. 2041. The determination of whether consent was voluntary or whether it was the result of duress or coercion is a question of

---

2. The state maintains that this issue is not preserved for appeal. We disagree.

The state's preservation argument is based upon defense counsel's general statement of "without objection" at the time of the crack cocaine's admission. The state contends that defense counsel's statement waived any prior objection to the suppression issue. However, we believe it is clear in the record that defense counsel was only referring to any issues regarding chain of custody when he stated he had. no objection to introduction of the cocaine. Forrester essentially admitted guilt, and the suppression motion was the only defense put forth. The trial judge had already ruled against Forrester on the suppression motion; no evidence had been submitted in the interim; and only chain of custody remained. Thus, it is clear that defense counsel was only referring to the chain of custody issue when he waived objection.

fact to be determined from the totality of the circumstances. *Id.* Thus, under the Fourth Amendment, a suspect's knowledge of the right to refuse consent is not a prerequisite to voluntary and intelligent consent, although it is a factor to be considered. *Id.* at 234, 93 S.Ct. 2041.

However, Forrester argues that our state constitution provides greater protection than that provided in the Fourth Amendment because of additional language contained in the state constitution. The analogous provision in the South Carolina Constitution is as follows:

> The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches *and seizures and unreasonable invasions of privacy* shall not be violated, and no warrants shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, the person or thing to be seized, and the information to be obtained.

S.C. Const. art. I, § 10 (emphasis added). Forrester argues that the express provision against unreasonable invasions of privacy requires that police officers affirmatively inform a suspect of the right to refuse consent to a search.

In *State v. Austin,* 306 S.C. 9, 409 S.E.2d 811 (Ct.App.1991), this court stated:

> It is firmly established that state courts may interpret their own constitutions in such a way as to expand rights conferred by the Federal Constitution. The principle of federalism envisions two separate and independent judicial systems: federal courts, which construe federal law, and state courts, which construe state law. State courts may, therefore, develop state law to provide their citizens with a second layer of constitutional rights.

*Austin,* 306 S.C. at 16, 409 S.E.2d at 815 (footnotes omitted). In a footnote, the court further stated that "Article I, § 10 of the State Constitution is less difficult to interpret than the Fourth Amendment ... [in that] the right of privacy is explicitly included in Article I, § 10." *Id.* at 16 n. 6, 409 S.E.2d at 815 n. 6. Thus, the court implies in *Austin* that the privacy provision in the state constitution might provide greater rights to citizens than the Fourth Amendment.

Other South Carolina cases have also discussed this privacy provision. In *State v. Andrews,* 324 S.C. 516, 479 S.E.2d 808 (Ct.App.1996), this court held that admission of taped phone calls between the defendant and a confidential informant did not violate the defendant's right to privacy under either the Fourth Amendment or our state constitution. The court did not discuss the two provisions as providing different protection, but instead analyzed Fourth Amendment law and concluded that "we further find there was no violation of Appellant's rights under South Carolina law." *Id.* at 521, 479 S.E.2d at 811.

In *Singleton v. State,* 313 S.C. 75, 437 S.E.2d 53 (1993), the court addressed whether the state could force antipsychotic drugs on a defendant to facilitate competency for execution. After discussing similar issues decided by the United States Supreme Court under the Due Process Clause, the court stated that the decisions "do not, however, answer the state constitutional question." *Id.* at 88, 437 S.E.2d at 60. The court then went on to apply both the federal and the state protection of privacy to enunciate what seems to be a stricter standard (best medical interest) than that found in *Riggins v. Nevada,* 504 U.S. 127, 135–36, 112 S.Ct. 1810, 118 L.Ed.2d 479 (1992) (medically appropriate). *See Singleton,* 313 S.C. at 87–88, 437 S.E.2d at 60. The court's decision in *Singleton* seemed to proceed on the basis that the federal and state constitutional protections of privacy are not mirror images of one another.[3]

Thus, there is South Carolina authority which indicates that our state constitutional provision may be construed to provide more expansive protection than the comparable federal constitutional provision. However, after careful consideration, we do not believe our state constitution's provision against unreasonable invasions of privacy requires that police officers "tell" suspects of the right to refuse consent before "asking" for consent to search.[4]

---

**3.** In *Southern Bell Tel. & Tel. Co. v. Hamm,* 306 S.C. 70, 409 S.E.2d 775 (1991), the court did not differentiate between the federal and state constitutional protections of privacy when determining whether Caller ID was unconstitutional.

**4.** Although South Carolina has no legislative history for constitutional amendments, we have the benefit of the discussions of The Committee

Other states, whose constitutions contain provisions similar to ours, have also held that their state constitutions did not require a "first tell, then ask" rule in regard to consensual searches. In *Illinois v. Brownlee*, 293 Ill.App.3d 315, 227 Ill.Dec. 692, 687 N.E.2d 1174 (1997), the court held that the state constitution did not require an officer to inform detained drivers of their right to refuse consent before asking to search the vehicle.[5] In *Louisiana v. Temple*, 343 So.2d 1024 (La. 1977), the court held that the failure to warn a suspect of the right to refuse consent to a search did not violate the provisions of the federal or state constitutions.[6]

In conclusion, the trial judge did not err in denying Forrester's motion to suppress. We decline to hold that our state constitution provides greater protection than the Fourth Amendment, thereby requiring police officers to inform citizens of the right to refuse consent to search. Rather, a police officer's failure to inform a citizen of such right is best

to Make a Study of the Constitution of South Carolina, 1895, which drafted the 1971 amendment to article I, section 10. *See* Constance Boken, *Expounding the State Constitution: The Substantive Right of Privacy in South Carolina*, 46 S.C.L.Rev. 191, 200–02 (1994) (citing unpublished minutes of the meetings). "[T]he history demonstrates the drafters' concern with expanding the right of privacy in the search and seizure arena because of the advent of computer data technology and electronic surveillance." Id. at 201. Apparently, the committee members were concerned with enhanced searches and seizures through new technologies, rather than expanding the responsibility of police in traditional searches and seizures. *See* Id. at n. 76 & accompanying text.

5. In *Brownlee,* the court addressed whether the state prohibition against unreasonable searches and seizures provided greater protection than the Fourth Amendment. After a comparison of the language in each provision and an analysis of federal and state law, the court declined to extend state protection beyond the fourth amendment protections. In accord with the South Carolina Constitution, Illinois's state constitution contained a prohibition against unreasonable invasions of privacy.

6. In *Temple,* the defendant appealed the denial of his motion to suppress under both the federal and state constitutions because he was not informed of his right to refuse consent of a search of his suitcase. In a footnote, the court cited the pertinent provisions of the U.S. Constitution and the Louisiana Constitution, which included a prohibition against unreasonable invasions of privacy. *Temple,* 343 So.2d at 1025 n. 1. The court then cited *Bustamonte* and found no error.

considered as one factor in determining whether consent was voluntary.[7]

**AFFIRMED.**

CONNOR and HUFF, JJ., concur.

---

**7.** *See State v. Wallace,* 269 S.C. 547, 551–52, 238 S.E.2d 675, 677 (1977) (Consent is not involuntary merely because suspect is not informed of right to refuse consent; "knowledge of right to refuse consent to search is merely another factor to be considered ... in determining voluntariness of consent to search.").