(No. 84739.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. LADRESHA F. BROWNLEE, Appellant.

*Opinion filed June 17, 1999.*

502

HEIPLE, J., specially concurring.

Robert G. Kirchner, of Lerner & Kirchner, of Champaign, for appellant.

James E. Ryan, Attorney General, of Springfield, and John C. Piland, State's Attorney, of Urbana (Barbara A. Preiner, Solicitor General, and William L. Browers and Lisa Anne Hoffman, Assistant Attorneys General, of Chicago, of counsel), for the People.

*Amicus curiae* Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb and Theodore Fotios Burtzos, Assistant State's Attorneys, of counsel).

JUSTICE BILANDIC delivered the opinion of the court:

In the circuit court of Champaign County, the State charged the defendant, Ladresha F. Brownlee, with the offense of possession with intent to deliver a controlled substance containing cocaine (720 ILCS 570/401(c)(2) (West 1994)). The defendant moved to quash her arrest and suppress the evidence against her. Following a hearing, the circuit court granted the defendant's motion. The State filed a certificate of impairment and appealed pursuant to Supreme Court Rule 604(a)(1) (145 Ill. 2d R. 604(a)(1)). The appellate court reversed and remanded

for further proceedings. 293 Ill. App. 3d 315. We allowed the defendant's petition for leave to appeal (177 Ill. 2d R. 315) and now reverse the appellate court.

The State's Attorney of Cook County filed a brief as *amicus curiae* in support of the State. 155 Ill. 2d R. 345.

## BACKGROUND

Urbana police officers Carlos Guerrero and Duane Maxey testified regarding the November 7, 1995, events that led to the defendant's arrest. The officers were on a "special detail" patrol looking for illegal drug activity and illegal weapons. Around 9:10 p.m., Guerrero observed a white car stop in front of an apartment complex. He drove by the car, turned around, and then observed the car leaving. The car had been stopped for about one minute.

As the officers drove past, Maxey watched one person exit the vehicle, knock on a residence door, and then leave. Maxey testified that he did not know whether the door was answered, but he believed that it was not. Nonetheless, this behavior aroused his suspicion because the area was known for its "crack houses" and because "it's commonplace for a [drug purchaser] to pull up, run up to a home for just a moment, make a buy and leave." According to Maxey, he and Guerrero verbally agreed to stop the car if probable cause for a traffic stop arose. Guerrero, however, stated that no conversation occurred on this subject. Maxey also testified that, while driving by the car, Guerrero informed him that Guerrero recognized the car's driver from past encounters. In contrast, Guerrero stated that he was not even able to identify the race or sex of the car's occupants.

The officers followed the car. The car proceeded without violating the law until it stopped at an intersection and turned left. Guerrero observed that the car failed to activate its turn signal within 100 feet of approaching the intersection and that, at the intersection,

the car stopped two feet beyond the stop sign. Maxey also observed the traffic violations and described the car as stopping about "one-half a car length" past the stop sign. The officers decided to stop the car for violating the traffic laws. Guerrero admitted that he wanted "to see if something would come of it." To his recollection, he had never before issued a traffic citation for either of these violations.

The officers approached the car, Guerrero toward the driver's side and Maxey toward the passenger's side. The driver and front seat passenger were young-adult males. Two young female passengers, one of whom was the defendant, sat in the backseat. The officers obtained the identities of all four occupants because identifying everyone in a vehicle was common departmental practice. Maxey observed that the defendant was holding an unopened bottle of beer, which did not violate the law. The officers then returned to their car and checked for outstanding warrants. They found none. The officers decided not to issue any traffic citations, but agreed to ask the driver for permission to search the car.

The officers re-approached the car. Guerrero testified that he returned to the driver his license and insurance card, and explained that no citations would be issued. He did not advise the driver that he could leave. Rather, Guerrero then "paused a couple [of] minutes." Following this pause, he asked the driver if he could search the vehicle. When asked what words he used in this regard, Guerrero explained that he told the driver that "we were concerned that there might be more alcohol in the car" and that he "just wanted permission to take a look inside the vehicle." The driver asked Guerrero whether he had a choice in the matter. Guerrero replied that the driver did have a choice and that he was "asking" if he could search the vehicle. The driver stepped out of the car and said, "Okay, you can search."

The three passengers were ordered out of the car and directed to stand with Maxey. Guerrero found an open beer bottle on the backseat floor where the defendant's feet had been. He also found two "blunts" lying underneath a man's jacket bundled up in the center of the front seat. A "blunt" was described as a hollowed-out cigar refilled with marijuana. No one claimed ownership of the blunts. The officers believed that the blunts were within reach of all the car's occupants because the front seat was split with a small armrest in the middle. When the four occupants exited the car, all were wearing coats with the exception of the male passenger.

Maxey testified that the defendant denied having any knowledge of the blunts. The other female passenger told Maxey that the blunts belonged to the men, but that all four individuals had been smoking them. The officers, however, noted that the blunts were not burned. Moreover, while searching the car, neither officer had noticed the odor of marijuana.

According to Maxey, the officers determined that they had probable cause to arrest all four individuals in the car because (1) the blunts were within reach of all four individuals, (2) no one claimed ownership of the blunts, (3) the other female passenger stated that all four individuals had smoked the blunts, and (4) the defendant stated that she had smoked marijuana before joining the others. Police searched the defendant incident to her arrest. On her person, police found the controlled substance that forms the basis of the present charge filed against her.

In the circuit court, the defendant filed a motion to quash her arrest and suppress the evidence against her. The motion charged, in pertinent part, that "the search of said vehicle violated Defendant's *** constitutional rights in that the continued detention and search of said vehicle were unrelated to the original *** basis for the

stop of said vehicle and any consent was the product of such unlawful detention." Defense counsel presented oral argument on this issue:

"[The officers] go back to their squad car. They run a warrant check and find that none of them have any outstanding warrants. At that point Officer Guerrero told us *** that *** they are not going to issue any [traffic] citations ***, but *** they were going to try to get consent to search the vehicle just to see if there was anything there.

Under *Terry* [*v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968)] and the [line of] cases which followed, even if that stop is justified, they have no right to further detain the vehicle to do an exploratory search just to see if something is there.

\* \* \*

*** The continued detention of the occupants of the vehicle, including my client, violates her rights. The scope of that detention violates her rights."

In further support of this position, defense counsel asked the court to consider *State v. Chatton*, 11 Ohio St. 3d 59, 463 N.E.2d 1237 (1984). In *Chatton*, an officer observed a vehicle without front or rear license plates. The officer effected a traffic stop and approached the vehicle on foot. Once the officer reached the vehicle's window, the officer observed a temporary license placard. Despite the officer's observation of the placard, he continued to detain the driver. Ultimately, a weapon was discovered underneath the driver's seat and the driver was arrested for a weapons violation. The Supreme Court of Ohio held that the officer lacked the authority to continue to detain the driver after observing the license placard, because the officer no longer had reasonable suspicion to suspect the driver of a traffic violation. Because the court found the officer's continued detention of the driver to be unconstitutional, it suppressed the weapon that was found as a result of that detention. *Chatton*, 11 Ohio St. 3d at 63, 463 N.E.2d at 1241.

The circuit court here first ruled that the initial traffic stop was permissible because the officers observed traffic violations. In doing so, the court rejected the defendant's separate argument that the traffic stop was invalid because the officers had effected a pretextual stop with the subjective intent to look for illegal drugs and weapons. Nonetheless, the circuit court quashed the defendant's arrest and suppressed the evidence against her. After referencing the line of cases pointed to by defense counsel, the court explained the basis for its ruling from the bench:

> "[I]t simply seems to me the kind of a case, when the officers testified they decided that as far as the traffic matters were concerned it was clear there weren't going to be any citations, I simply think that line of cases *** is talking about a situation like this where, in effect, the matter has been cleared as far as the traffic stop was concerned and there was nothing else to create any reasonable or articulable suspicion of any other illegal activity, *** consent notwithstanding, I think you cannot go any further, and I am going to allow the motion."

The circuit court thus held that, after the purpose for the traffic stop was cleared, the officers should not have proceeded because they lacked reasonable suspicion of any other illegal activity, consent notwithstanding. In rendering this decision, the court explicitly rejected the State's argument that the controlling fact in the case was that the driver gave consent to search the car. It also mentioned the Ohio case cited by defense counsel. All of the court's comments, when considered along with defense counsel's motion and argument, show that the court agreed with the defendant's position that (1) after the officers determined not to issue any traffic citations, their continued detention of the car's occupants violated the defendant's constitutional rights, and (2) the driver's consent to search the car was tainted as the product of that unlawful detention.

The State appealed. The State argued in the appel-

late court only that the defendant lacked standing to challenge the search of the car and that the search was valid based on the driver's consent. While the appeal was pending, the Supreme Court of the United States issued *Ohio v. Robinette*, 519 U.S. 33, 136 L. Ed. 2d 347, 117 S. Ct. 417 (1996). In *Robinette*, the Court held that the fourth amendment to the United States Constitution does not require a police officer to tell a motorist that the motorist is free to leave before asking for consent to search the motorist's car. *Robinette*, 519 U.S. at 39-40, 136 L. Ed. 2d at 355, 117 S. Ct. at 421. The appellate court determined that *Robinette* controlled the disposition of this case. *People v. Brownlee*, 285 Ill. App. 3d 432 (1996). After stating that Officer Guerrero was not required to inform the driver that he was free to leave before requesting permission to search the car, the appellate court reversed the circuit court's decision and remanded for further proceedings. The appellate court never addressed the defendant's argument, made in support of the circuit court's decision, that the officers' continued detention of the car, after declining to issue any citations, was unconstitutional. The defendant had maintained that this continued detention violated both the state and federal constitutions.

The defendant filed a petition for leave to appeal with this court. Her main allegation of error therein was that the appellate court wrongly reversed the circuit court's decision in her favor without addressing her argument that the officers' continued detention of the car violated the state constitution. Utilizing our supervisory powers, we vacated the appellate court's judgment and remanded the cause to the appellate court with directions that it consider the defendant's argument under the Illinois Constitution of 1970. On remand, the defendant filed a supplemental brief reasserting her argument that the officers' continued detention of the car violated our state

constitution, notwithstanding the driver's consent. The State, in contrast, filed a supplemental brief on the issue of whether our state constitution imposes an affirmative duty upon officers to inform a motorist that the motorist is free to leave before requesting permission to search the motorist's car. The appellate court held that section 6 of article I of our state constitution, like the fourth amendment to the federal constitution, does not impose a duty upon officers to inform a motorist that the motorist is free to leave before requesting permission to search the motorist's car. 293 Ill. App. 3d 315. Based on that holding, the appellate court once again reversed the circuit court's decision and remanded for further proceedings. As before, the appellate court did not address the defendant's argument that the officers' continued detention of the car was unconstitutional. The defendant filed a petition for leave to appeal from the appellate court's judgment, which we allowed.

## PREFATORY NOTE

In this court, the State filed a motion to strike portions of the defendant's brief. The motion claimed that the defendant should not be permitted to raise her continued-detention argument because the appellate court never addressed it. We entered an order denying the State's motion to strike. It is well established that a reviewing court may affirm the circuit court's decision based on any ground in the record. *People v. Dilworth*, 169 Ill. 2d 195, 205 (1996); *People v. Thomas*, 164 Ill. 2d 410, 419 (1995). Here, the defendant is not just advancing a ground in the record as a basis for affirming the circuit court's decision, but is advancing the very rationale that the circuit court gave as the reason for its decision. The defendant is entitled to raise this argument in this court. Hence, we denied the State's motion to strike. We further directed the State to brief the continued-detention issue for our consideration. The State has filed

its supplemental brief, to which the defendant has filed a supplemental reply brief.

## ANALYSIS

The defendant contends that the appellate court erred in reversing the circuit court's decision to quash her arrest and suppress the evidence against her. According to the defendant, the circuit court was correct in concluding that, after the initial purpose for the traffic stop was concluded, the officers' continued detention of the car and its occupants violated her constitutional rights and thereby invalidated the subsequent consent to search the car and her arrest. She invokes both the federal and state constitutions in support of her claim. See U.S. Const., amend. IV; Ill. Const. 1970, art. I, § 6.

In this argument, the defendant asserts that the traffic stop ended when Officer Guerrero returned to the driver his license and insurance card, and explained that no citations would be issued. Guerrero did not, at that point, ask the driver for permission to search the car. Instead, the officer "paused" for "a couple [of] minutes," during which time the driver and all his passengers were detained without probable cause or reasonable suspicion of any criminal activity. Following this detention, Guerrero asked the driver for consent to search the car. The defendant also argues that the driver did not immediately consent. After the driver and Guerrero engaged in conversation about a search, the driver relented and gave his consent.

The State, in contrast, argues that the issue presented to this court for review is whether, pursuant to *Ohio v. Robinette*, 519 U.S. 33, 136 L. Ed. 2d 347, 117 S. Ct. 417 (1996), the appellate court properly determined that the circuit court erred in granting the defendant's motion to quash her arrest and suppress the evidence against her. The State contends that *Robinette* applies squarely to the case at bar and requires reversal of the

circuit court's decision. The State also contends that article I, section 6, of the Illinois Constitution of 1970 must be interpreted in "lockstep" with *Robinette*'s interpretation of the fourth amendment to the United States Constitution. The *amicus* brief urges application of the lockstep doctrine as well.

We must first decide whether *Robinette* requires reversal of the circuit court's decision, as the State claims. In that case, a deputy sheriff stopped Robinette for speeding. Robinette gave his driver's license to the deputy, who ran a computer check and found no previous violations. After asking Robinette to step out of his car, the deputy activated a video camera mounted inside the deputy's car, issued a verbal warning to Robinette, and returned his license. The deputy then asked, "One question before you get gone: [A]re you carrying any illegal contraband in your car? Any weapons of any kind, drugs, anything like that?" *Robinette*, 519 U.S. at 35-36, 136 L. Ed. 2d at 352, 117 S. Ct. at 419. Robinette responded in the negative. The deputy then asked Robinette for permission to search his car, and Robinette consented. The deputy found a small amount of marijuana and one pill.

After being charged with possession of a controlled substance, Robinette sought to suppress the evidence against him. The trial court ruled against Robinette. The Ohio Court of Appeals reversed. The Supreme Court of Ohio affirmed the appellate court, but adopted a new bright-line rule in the process, as follows:

> " 'The right, guaranteed by the federal and Ohio Constitutions, to be secure in one's person and property requires that citizens stopped for traffic offenses be clearly informed by the detaining officer when they are free to go after a valid detention, before an officer attempts to engage in a consensual interrogation. Any attempt at consensual interrogation must be preceded by the phrase "At this time you legally are free to go" or by words of similar import.' "

*Robinette*, 519 U.S. at 36, 136 L. Ed. 2d at 353, 117 S. Ct. at 419-20, quoting *State v. Robinette*, 73 Ohio St. 3d 650, 650-51, 653 N.E.2d 695, 696 (1995).

The Supreme Court of the United States granted *certiorari* "to review this *per se* rule." *Robinette*, 519 U.S. at 36, 136 L. Ed. 2d at 353, 117 S. Ct. at 420. The Supreme Court rejected this rule and instead held that a law enforcement officer is not constitutionally required to tell a motorist that the motorist is free to leave before asking for consent to search the motorist's car. The Court reaffirmed that a totality-of-the-circumstances test is utilized to determine whether a motorist's consent to search was voluntarily given. *Robinette*, 519 U.S. at 40, 136 L. Ed. 2d at 355, 117 S. Ct. at 421.

We disagree with the State's assertion that *Robinette* requires reversal of the circuit court's decision quashing the defendant's arrest and suppressing the evidence against her. The circuit court here did not grant the defendant's motion on the ground that the officers' failure to tell the driver that he was free to leave invalidated the driver's consent. Rather, the court found decisive the issue of whether the officers' continued detention of the car and its occupants violated fourth amendment principles. The court determined that, after Officers Guerrero and Maxey decided not to issue any traffic citations, their continued detention of the car and its occupants violated the defendant's constitutional rights. The court specifically found that the officers lacked reasonable suspicion of any illegal activity at the time of this detention. This continued-detention issue requires consideration independent from *Robinette*. The circuit court also concluded that the officers' illegal detention of the car tainted the driver's consent to search, which required suppression of the fruits of that detention. *Robinette*, however, does not speak to the issue of taint. Consequently, nothing in *Robinette* dispenses with the circuit court's holdings.

The State asserts, in its supplemental brief, that "implicit in *Robinette* is the fact that a proper traffic stop has been completed at the time that police request consent to search a vehicle, hence the holding that police need not inform a driver that he is free to go before they request consent to search." This argument appears to claim that *Robinette* implicitly determined that it is always permissible for police to request consent to search a vehicle following the completion of a valid traffic stop. This claim may be true in the sense that an officer is always free to request permission to search;[1] nonetheless, it does not require reversal of the circuit court's decision. The problem in this case was not that the officers requested permission to search the car. It was that the officers unconstitutionally detained the car and its occupants *before* requesting permission to search the car, and after the conclusion of the traffic stop. Certainly *Robinette* does not stand for the proposition that, following the conclusion of a lawful traffic stop, officers may detain a vehicle without reasonable suspicion of any illegal activity and for any amount of time, so long as they ultimately request and obtain permission to search the car. We therefore reject this argument by the State.

The State also represents in its brief that the circuit court relied upon the underlying Ohio state court decision in *Robinette* in reaching its decision. This is not accurate. The only Ohio case mentioned during the circuit court proceedings was *State v. Chatton*, 11 Ohio St. 3d 59, 463 N.E.2d 1237 (1984), and it is not related to *Robinette*.

Given that *Robinette* is not dispositive of the case

---

[1]Of course, *Robinette* clearly reaffirmed that, in determining whether a motorist's consent to search was voluntarily given *in response to the officer's request*, a totality-of-the-circumstances test is utilized. *Robinette*, 519 U.S. at 40, 136 L. Ed. 2d at 355, 117 S. Ct. at 421.

before this court, we cannot decide whether to interpret article I, section 6, of the Illinois Constitution in lockstep with that decision's interpretation of the fourth amendment. We thus express no opinion on that issue.

We now consider the determinative issue in this appeal. The defendant contends that the circuit court was correct in concluding that, after the initial purpose for the traffic stop was concluded, the officers' continued detention of the car and its occupants violated her constitutional rights and thereby invalidated the subsequent consent to search the car and her arrest. According to the defendant, the traffic stop ended when Officer Guerrero returned to the driver his license and insurance card, and explained that no citations would be issued. Guerrero did not, at that point, ask the driver for permission to search the car. Instead, the officer paused for a couple of minutes, during which time the driver and all his passengers were detained without probable cause or reasonable suspicion of any criminal activity. Following this detention, Guerrero asked the driver for consent to search the car.

The State counters that there was no unconstitutional detention. The State concedes that the traffic stop had legally come to an end once the officers informed the driver that no citations would be issued. Nonetheless, the State maintains that the conclusion of this traffic stop was merely followed by "a consensual conversation between Officer Guerrero and the driver of the vehicle that resulted in a voluntary consent to search the vehicle." The State argues that a reasonable person in the driver's position would have believed that he or she was free to leave at the point when the officers informed the driver that no citations would be issued. Later in its brief the State acknowledges that the officer paused for two minutes at the end of the traffic stop and before beginning the ensuing conversation. The State claims that

this pause did not constitute an illegal detention because, "arguably, during that couple of minutes, the driver could have driven away." The State does not contest that, during these two minutes, the officers had no probable cause or reasonable suspicion of any criminal activity. Nor does the State offer any explanation or justification for the officers' actions.

As a preliminary matter, for our purposes here, we can assume that the initial traffic stop of the car in which the defendant was riding was permissible based on the officers' observations of the traffic violations. See *People v. Gonzalez*, 184 Ill. 2d 402, 413 (1998). The discussion that follows does not pertain to that initial traffic stop, which, the State concedes, had legally come to an end. It pertains to the actions following the lawful conclusion of that stop.

It is well established that the fourth amendment applies to all seizures of a person. *People v. Wardlow*, 183 Ill. 2d 306, 309 (1998), *cert. granted*, No. 98—1036 (U.S. May 3, 1999). A person is seized "when, by means of physical force or a show of authority," that person's "freedom of movement is restrained." *United States v. Mendenhall*, 446 U.S. 544, 553, 64 L. Ed. 2d 497, 509, 100 S. Ct. 1870, 1877 (1980). In deciding whether a seizure has occurred, a court considers whether "if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Mendenhall*, 446 U.S. at 554, 64 L. Ed. 2d at 509, 100 S. Ct. at 1877; see *People v. Murray*, 137 Ill. 2d 382, 390 (1990) (approving the use of the *Mendenhall* standard).

As a general rule, all seizures must be reasonable, and the reasonableness of a seizure depends on a balance between the public interest and the individual's right to personal security free from arbitrary interference from law enforcement officers. *United States v. Brignoni-*

*Ponce*, 422 U.S. 873, 878, 45 L. Ed. 2d 607, 614-15, 95 S. Ct. 2574, 2578-79 (1975); see *Gonzalez*, 184 Ill. 2d 402 (holding that it is reasonable for a law enforcement officer to order a passenger to stay at the scene of a traffic stop because the public interest in officer safety outweighs the minimal intrusion to that passenger's liberty interest). Thus, a person may not be seized unless there are reasonable, objective grounds for doing so. *Mendenhall*, 446 U.S. at 551-52, 64 L. Ed. 2d at 507-08, 100 S. Ct. at 1875-76. Once an illegal seizure has occurred, that illegality may infect and taint the fruits that subsequently resulted. See *Wong Sun v. United States*, 371 U.S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407 (1963).

It is equally well settled that the fourth amendment applies even to those seizures that involve only a brief detention short of traditional arrest. *Wardlow*, 183 Ill. 2d at 309. The Supreme Court in *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968), ruled that the public interest in effective law enforcement makes it reasonable for law enforcement officers to detain and question individuals under certain circumstances where probable cause to arrest is lacking. To protect the rights of individuals, though, the Court established that such limited investigatory stops are permissible only upon a reasonable suspicion based upon specific and articulable facts that the person has committed, or is about to commit, a crime. *Wardlow*, 183 Ill. 2d at 310, citing *Terry*, 392 U.S. at 21-22, 20 L. Ed. 2d at 906, 88 S. Ct. at 1880. The Illinois General Assembly engrafted the *Terry* standard into our criminal code. *People v. Flowers*, 179 Ill. 2d 257, 262 (1997); see 725 ILCS 5/107—14 (West 1994). This "same standard is applied in determining the propriety of an investigatory stop under article I, section 6, of the Illinois Constitution of 1970 (Ill. Const. 1970, art. I, § 6)." *Wardlow*, 183 Ill. 2d at 310.

The Court in *Terry* set forth a dual inquiry for decid-

ing whether an officer's investigative detention is reasonable: (1) "whether the officer's action was justified at its inception" and (2) "whether it was reasonably related in scope to the circumstances which justified the interference in the first place." *Terry*, 392 U.S. at 19-20, 20 L. Ed. 2d at 905, 88 S. Ct. at 1879. The principles applicable to the second prong of this inquiry were elaborated on in *Florida v. Royer*, 460 U.S. 491, 75 L. Ed. 2d 229, 103 S. Ct. 1319 (1983) (plurality opinion). There, the Court stated, "This much *** is clear: an investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop." *Royer*, 460 U.S. at 500, 75 L. Ed. 2d at 238, 103 S. Ct. at 1325 (plurality opinion). *Royer* also stated that the State bears the burden of showing that a seizure based on reasonable suspicion was sufficiently limited in scope and duration to satisfy the conditions of an investigative seizure. *Royer*, 460 U.S. at 500, 75 L. Ed. 2d at 238, 103 S. Ct. at 1326 (plurality opinion). Finally, the tainted fruit doctrine applies in the *Terry* context as well. *Royer* specifically held that where an officer's confinement of a person goes beyond the limited restraint of a *Terry* investigative stop, a subsequent consent to search may be found to be tainted by the illegality. *Royer*, 460 U.S. at 501, 75 L. Ed. 2d at 238-39, 103 S. Ct. at 1326, citing *Wong Sun*, 371 U.S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407 (majority holding).

In the case at bar, the circuit court agreed with the defendant's position that, after the officers determined not to issue any traffic citations, their continued detention of the car's occupants violated the defendant's constitutional rights. The circuit court thus necessarily concluded that, following the lawful end of this traffic stop, a reasonable person in the driver's position would not have felt free to leave in view of all the circumstances surrounding the incident. See *Mendenhall*, 446 U.S. at

554, 64 L. Ed. 2d at 509, 100 S. Ct. at 1877. Rather, the officers restrained the movements of the car's occupants by their show of authority. See *Mendenhall*, 446 U.S. at 553, 64 L. Ed. 2d at 509, 100 S. Ct. at 1876-77. There is no dispute in this appeal that the driver had no choice but to submit to the officers' lawful authority while they conducted their traffic stop and related investigation. This traffic stop concluded when, with Officer Guerrero standing on the driver's side of the car, and Officer Maxey standing on the passenger side of the car, Guerrero returned to the driver his license and insurance card, and explained that no citations would be issued. According to Guerrero's own testimony, he then "paused" for "a couple [of] minutes." The officers apparently did not move from their stations at the car's doors during this two-minute time period, but rather stood there, saying nothing. Given these circumstances, we can find no fault with the circuit court's conclusion that the officers' actions constituted a show of authority such that a reasonable person would conclude that he or she was not free to leave.

A reasonable person in this driver's situation would likely conclude that, if he or she drove away, then the two officers would soon be in hot pursuit. Indeed, when Officer Guerrero finally engaged the driver in conversation and requested permission to look inside the vehicle, the driver replied by asking whether he had a choice in the matter. The driver's question shows that, not only did the driver believe that he was not free to drive away at that point, he was uncertain whether he was required to submit to Guerrero's request to search his car. Although the test for whether a reasonable person would have felt free to leave is an objective one, this driver's subjective reaction to the two officers' show of authority bolsters our conclusion on this matter. A reasonable person in this situation would not have felt free to leave.

Accordingly, the driver and his passengers, including the defendant, were subjected to a seizure.

As noted above, a person cannot be seized unless there are reasonable, objective grounds for doing so. *Mendenhall*, 446 U.S. at 556, 64 L. Ed. 2d at 510-11, 100 S. Ct. at 1878; see *Gonzalez*, 184 Ill. 2d 402. Likewise, under the *Terry* line of cases, the State bears the burden of showing that an investigative detention based on reasonable suspicion was sufficiently limited in scope and duration to satisfy the conditions of a *Terry* investigative seizure. *Royer*, 460 U.S. at 500, 75 L. Ed. 2d at 238, 103 S. Ct. at 1326. In the present case, however, the State makes no attempt to show that the officers' continued detention of the car was in any way reasonable or objectively justified. Nor does the State attempt to show that the officers' detention was sufficiently limited in scope or duration to satisfy the conditions of a *Terry* investigative seizure. The State has therefore waived the right to challenge the circuit court's holding that the officers' continued detention of the car and its occupants was unconstitutional because it was not reasonable.

In addition, as earlier stated, the law is settled that, where an illegal detention has occurred, a subsequent consent to search may be found to have been tainted by the illegality. *Wong Sun*, 371 U.S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407; *Royer*, 460 U.S. at 501, 75 L. Ed. 2d at 238-39, 103 S. Ct. at 1326, citing *Wong Sun*, 371 U.S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407. Here, the State has failed to argue that the evidence against the defendant should not have been suppressed as the fruit of the officers' illegal detention. The State has thus waived the right to contest the circuit court's determination that the evidence against the defendant must be suppressed because the driver's consent to search was tainted as the product of the officers' illegal detention.

## CONCLUSION

For the foregoing reasons, we reverse the appellate

court's judgment reversing the circuit court's judgment. The circuit court's judgment is affirmed.

*Appellate court judgment reversed;*
*circuit court judgment affirmed.*

JUSTICE HEIPLE, specially concurring:

The court holds today that police officers may not detain a vehicle after the initial purpose for a traffic stop is concluded, and that any evidence seized during such a detention is inadmissible, consent to search notwithstanding. While I agree with this holding, I write separately because the majority fails to base its decision independently on the Illinois Constitution, despite defendant's request that we do so.

It is apparent from the majority's analysis that the United States Supreme Court has not specifically addressed whether the United States Constitution allows police officers to detain a motor vehicle after the initial purpose for a traffic stop is concluded. Nevertheless the majority opinion, citing both the United States Constitution and the Illinois Constitution, holds that such a detention is "illegal." 186 Ill. 2d at 518, 519, 521.

The United States Supreme Court has warned that, when deciding an issue on which federal law is unsettled, state courts should clearly delineate whether their decision is based on federal or state grounds. *Michigan v. Long*, 463 U.S. 1032, 1040-41, 77 L. Ed. 2d 1201, 1214, 103 S. Ct. 3469, 3476 (1983). This directive stems from the Supreme Court's concern that its "authority as final arbiter of the United States Constitution could be eroded by a lack of clarity in state-court decisions." *Arizona v. Evans*, 514 U.S. 1, 9, 131 L. Ed. 2d 34, 43, 115 S. Ct. 1185, 1190 (1995). Such clarity is particularly important where the state court opinion refers to both the United States Constitution and the state's constitution. See *Pennsylvania v. Labron*, 518 U.S. 938, 135 L. Ed. 2d 1031, 116 S. Ct. 2485 (1996) (noting that state court failed to

clarify whether its reference to state constitution was intended as exclusive ground of decision where it also cited cases interpreting federal constitution); *Michigan v. Chesternut*, 486 U.S. 567, 571 n.3, 100 L. Ed. 2d 565, 570 n.3, 108 S. Ct. 1975, 1978 n.3 (1988) (same).

In the instant case, the court's opinion discusses both state and federal precedent, ultimately concluding that the challenged detention was unlawful. The United States Supreme Court, however, has never specifically addressed this question. The court's opinion thus grants greater protections to criminal defendants under the Illinois Constitution than are currently recognized under the United States Constitution. In a recent concurrence, Justice Ginsburg offered the following counsel for state courts rendering decisions in such situations:

> "It is incumbent on a state court, *** when it determines that its State's laws call for protection more complete than the Federal Constitution demands, to be clear about its ultimate reliance on state law. Similarly, a state court announcing a new legal rule arguably derived from both federal and state law can definitively render state law an adequate and independent ground for its decision by a simple declaration to that effect." *Ohio v. Robinette*, 519 U.S. 33, 44, 136 L. Ed. 2d 347, 357, 117 S. Ct. 417, 423 (1996) (Ginsburg, J., concurring in the judgment).

In failing to declare explicitly that the Illinois Constitution constitutes an independent ground for its decision, the court's opinion places the rights of Illinois citizens in the hands of the federal judiciary. If an independent state law basis is not clearly apparent from a state court's opinion, the United States Supreme Court will treat the decision as if based solely on federal law. *Long*, 463 U.S. at 1040-41, 77 L. Ed. 2d at 1214, 103 S. Ct. at 3476. The Supreme Court is therefore free to reverse this court's judgment if it disagrees with our view of the protections which should be afforded to criminal defendants, in this as well as in other cases. See, *e.g.*, *People v. Wardlow*, 183 Ill. 2d 306, 310-11 (1998) (citing

both federal and state constitutions in holding that flight alone is insufficient to justify an investigatory stop), *cert. granted*, No. 98—1036 (U.S. May 3, 1999).

The responsible approach in this and other similar cases is to preclude federal review of the issue in question by clearly basing our holding on the Illinois Constitution. If this court truly believes that the right announced today is an essential component of the protection against unreasonable searches and seizures, we should take the simple steps necessary to prevent its possible curtailment by the United States Supreme Court. By failing to be specific, this court has neglected an important "opportunity to develop state jurisprudence unimpeded by federal interference." *Long*, 463 U.S. at 1041, 77 L. Ed. 2d at 1214, 103 S. Ct. at 3476.

For these reasons, I concur only in the court's judgment.