THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ADAM J. HEATHER, Defendant-Appellant.

Fourth District   No. 4—02—0627

Opinion filed July 30, 2004.—Modified on denial of rehearing September 23, 2004.

Daniel D. Yuhas and Erica R. Clinton, both of State Appellate Defender's Office, of Springfield, for appellant.

Jerry J. Hooker, State's Attorney, of Mt. Sterling (Norbert J. Goetten and Robert J. Biderman, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE MYERSCOUGH delivered the opinion of the court:

Following a stipulated bench trial in May 2002, the trial court found defendant, Adam J. Heather, guilty of unlawful possession of cannabis. 720 ILCS 550/4(e) (West 2000). The trial court sentenced defendant to 24 months' imprisonment with 3 days' credit for time served. Defendant appeals the court's denial of his motion to suppress, arguing the deputy exceeded the scope of his authority by questioning the driver of the vehicle about possible criminal activity after the traffic stop was completed. We reverse the court's denial of defendant's motion to suppress and vacate the judgment of conviction.

## I. BACKGROUND

At the hearing on the motion to suppress in December 2001, deputy sheriff Michael Scott Hainline testified to the following. On August 25, 2000, Hainline was assigned to routine traffic patrol in Brown County. As a significant part of his training for traffic duties, he testified, he underwent drug interdiction training. Hainline testified that this training taught him to go "beyond the initial traffic stop" and to ask different questions and to look for different answers or nonresponsiveness, to observe the body language of passengers, to look for movement within the passenger compartment, and how to identify different types of drugs and drug paraphernalia. In addition to teaching him to identify situations in which a further search may be warranted, the classes taught him techniques to effectuate that search in a manner that would reduce the level of constitutional scrutiny.

At 4 a.m. on August 25, as Hainline was driving eastbound along U.S. Route 24, he noticed in his side mirror that defendant's westbound car that he had just passed did not have a working registration light. Hainline turned his car around, switching from the eastbound lane to the westbound lane, and upon confirming that the car did not have a working registration light, pulled the car over. As he initiated his squad car's overhead lights, "take-down" lights, and spotlights, Hainline observed movement in the vehicle and noted that

it appeared that there were three subjects in the vehicle. Hainline admitted the movement was not unusual.

After stopping the car, Hainline determined Lucas Roberts was the driver. Hainline testified that he approached the vehicle on the passenger side and that defendant, the passenger in the front seat, initially looked surprised that he had come up on his side instead of on the driver's side. Hainline then introduced himself, stated the reason for the stop, and asked Roberts, the driver of the car, for his license and proof of insurance. Hainline also asked for identification from the defendant and Walter Bartz, the passenger in the rear. Hainline testified that defendant did not directly look at him, except to answer questions about his identity and birth date. Hainline characterized this behavior as suspicious under the "no look test," saying that most passengers will look at the officer just as a show of respect and that it is suspicious if a passenger tries to ignore the officer or pretend that he is not there. Conversely, Hainline testified that Bartz, the passenger in the rear seat, was overly friendly, which also was suspicious behavior. As he was talking to the vehicle's occupants, Hainline smelled a strong odor, although he could not identify the scent, but it could have been food. Hainline testified that a strong odor, even if the smell could not be identified, was often indicative of the masking of drugs or drug use in the car.

Hainline took the information he received and returned to his patrol car to check that Roberts' driver's license was valid and to run a warrant check on defendant and Bartz. Hainline found that both defendant and Bartz had criminal histories, but Roberts had none. Additionally, Hainline testified that he recalled previously receiving information from the West Central Illinois Drug Task Force that defendant was involved in illegal drug activity. However, Roberts had a valid driver's license and proof of insurance, and no warrants were outstanding for defendant and Bartz, so Hainline exited his patrol car and approached the vehicle, this time from the driver's side. Hainline then asked Roberts to exit his car and to join him at the rear of the car. Roberts complied, and Hainline talked briefly with him while he wrote out a warning ticket. Hainline asked Roberts where they were coming from and what they were doing. Roberts answered that they had been at a friend's house in Beardstown. When asked the name of the person they had visited, Roberts did not answer. Hainline then issued the warning ticket to Roberts and returned his insurance card and driver's license, informing him that he was free to go.

There is some dispute as to whether Roberts reentered the vehicle and was about to leave or whether he was simply returning to the vehicle. Roberts testified that after Hainline told him he was free to

leave, Roberts got back into his vehicle and was preparing to leave when Hainline approached his car window and started questioning him again. According to Hainline, after Roberts received his warning ticket, driver's license, and insurance card, Roberts turned to walk back toward his vehicle. As Roberts was walking away, Hainline asked him if they had any open alcohol in the vehicle. Roberts replied in the negative. Hainline asked him if there were any loaded guns in the car. Roberts answered no. Hainline asked if there were any illegal drugs in the car. Roberts testified he said no. However, Hainline testified that Roberts did not provide an answer, but instead looked down and away from him. Hainline then asked for permission to search the vehicle. Hainline denied telling Roberts that he could keep them there until they consented to a search or until a canine unit arrived. However, Hainline admitted that he may have said other units, including perhaps a canine unit, were in the area and could be on their way. Hainline testified that he did this, not as an intimidation, but out of concern for his own safety, as he was outnumbered three to one. Hainline further testified that the reason he waited to question Roberts about the contents of his vehicle until after he had returned his license and told him he was free to go was to prevent Roberts from saying at trial that he did not feel he was free to leave at that moment.

After Hainline received consent to search the car, he ordered the passengers out and frisked each of them, finding no weapons or contraband. He then opened the passenger-side door and began a vehicle search, which resulted in his finding a "one-hitter" pipe and a large bag of plant material, which later field tested positive for cannabis.

Roberts testified that he did not initially consent, but after Hainline told Roberts that he could keep them there until they consented or he brought in a canine to search, Roberts eventually consented.

Defendant testified that Hainline returned Roberts' driver's license and insurance card and told Roberts he was free to leave. Defendant stated, however, that when Hainline asked permission to search the vehicle, Roberts said no. Defendant further stated that Hainline told Roberts Hainline could detain the car until a canine unit arrived. On cross-examination, defendant admitted that he was not standing near Roberts while Hainline questioned him; rather, defendant remained in the car during the questioning.

The trial court denied defendant's motion to suppress, finding that (1) the initial traffic stop was permissible, (2) a reasonable person in Roberts' position would believe he was free to leave, (3) the detention was not improperly prolonged, and (4) Hainline had reasonable suspicion to ask for consent to search.

Following a stipulated bench trial, defendant was found guilty of unlawful possession of cannabis. Defendant filed a posttrial motion, arguing the trial court erred in denying his motion to suppress. On July 29, 2002, the court denied defendant's posttrial motion and sentenced defendant to 24 months' imprisonment. This appeal followed.

## II. ANALYSIS

### A. Standard of Review

■ "When a trial court's ruling on a motion to suppress involves factual determinations or credibility assessments, the court's ruling will not be disturbed on review unless it is manifestly erroneous." *People v. Gonzalez*, 204 Ill. 2d 220, 223, 789 N.E.2d 260, 263 (2003). However, where the facts and witness credibility are not in dispute, the ultimate question posed by the legal challenge to the court's ruling is reviewed *de novo*. *Gonzalez*, 204 Ill. 2d at 223, 789 N.E.2d at 263. In the present case, the court found a reasonable person in defendant's position would have believed he was free to leave, and defendant does not challenge the court's factual determinations. Therefore, we accept the court's findings of fact, and we review *de novo* the issue of whether Hainline's continued detention was appropriate.

### B. Denial of Motion To Suppress

Defendant argues the trial court erred in denying his motion to quash arrest and suppress evidence, contending Hainline did not have reasonable suspicion to continue questioning the driver after the purpose of the stop concluded. We agree.

■ In *People v. Harris*, 207 Ill. 2d 515, 802 N.E.2d 219 (2003), the Illinois Supreme Court addressed the parameters within which a police officer must operate when a motorist is stopped for a traffic offense. Relying on *Gonzalez*, the supreme court stated that a vehicle stop constitutes a seizure of the vehicle's occupants and is, therefore, subject to the fourth amendment's requirement of reasonableness. *Harris*, 207 Ill. 2d at 522, 802 N.E.2d at 224, citing *Gonzalez*, 204 Ill. 2d at 226, 789 N.E.2d at 266. In determining the reasonableness of a traffic stop, courts are guided by the supreme court's observation that the usual traffic stop is more analogous to a *Terry* investigative stop than to a formal arrest. *Harris*, 207 Ill. 2d at 522, 802 N.E.2d at 224-25, citing *Gonzalez*, 204 Ill. 2d at 226, 789 N.E.2d at 266. Therefore, as a general rule, a fourth amendment challenge to the reasonableness of a traffic stop is analyzed under *Terry* principles.

In accordance with *Terry*, a police officer may briefly detain an individual for questioning, absent probable cause to arrest, if the of-

ficer has a reasonable, articulable suspicion of criminal activity. *Terry v. Ohio*, 392 U.S. 1, 21-22, 20 L. Ed. 2d 889, 906, 88 S. Ct. 1868, 1880 (1968). However, if a detention exceeds what is permissible as a *Terry* investigative stop, a later consent to search may be found to be tainted by the illegality. *People v. Brownlee*, 186 Ill. 2d 501, 519, 713 N.E.2d 556, 566 (1999).

■ A *Terry* analysis includes a dual inquiry: (1) whether the officer's action was justified at its inception, and (2) whether it was reasonably related in scope to the circumstances that justified the interference in the first place. *Harris*, 207 Ill. 2d at 522-23, 802 N.E.2d at 225, citing *Gonzalez*, 204 Ill. 2d at 228, 789 N.E.2d at 266, quoting *Terry*, 392 U.S. at 19-20, 20 L. Ed. 2d at 905, 88 S. Ct. at 1879. With respect to the first inquiry, defendant concedes that the vehicle stop in this case was justified at its inception. With respect to the second inquiry, we must consider whether Hainline's questioning of Roberts was reasonably related in scope to the circumstances that justified the stop in the first place. If so, no fourth amendment violation occurs. *Harris*, 207 Ill. 2d at 523, 802 N.E.2d at 225, quoting *Gonzalez*, 204 Ill. 2d at 235, 789 N.E.2d at 270. If the questioning was not reasonably related to the purpose of the stop, we must consider whether the law enforcement officer had a reasonable, articulable suspicion that would justify the questioning. If the questioning is so justified, no fourth amendment violation occurs. *Harris*, 207 Ill. 2d at 523, 802 N.E.2d at 225, quoting *Gonzalez*, 204 Ill. 2d at 235, 789 N.E.2d at 270. Absent a reasonable connection to the purpose of the stop or a reasonable, articulable suspicion, " 'we must consider whether, in light of all the circumstances and common sense, the question impermissibly prolonged the detention or changed the fundamental nature of the stop.' " *Harris*, 207 Ill. 2d at 524, 802 N.E.2d at 225, quoting *Gonzalez*, 204 Ill. 2d at 235, 789 N.E.2d at 270.

In *Harris*, the supreme court clarified its holding in *Gonzalez*, finding a passenger warrant check unreasonably prolonged a traffic stop. In *Harris*, the court found that the warrant check was not directly related to the initial justification for the traffic stop, and the warrant check was not supported by a reasonable, articulable suspicion that defendant committed or was about to commit a crime. Therefore, *Harris* found the warrant check changed the fundamental nature of the stop. *Harris*, 207 Ill. 2d at 528, 802 N.E.2d at 228.

The First District recently applied the *Harris* reasoning in *People v. Torres*, 347 Ill. App. 3d 252, 265-66, 807 N.E.2d 654, 666 (2004), and found the trial court erred in denying the defendant's motion to suppress. In *Torres*, two police officers approached both sides of the vehicle after witnessing what they believed to be a domestic altercation. While

Officer Kurpiel asked the female occupant if she was alright, his partner asked the defendant to exit the vehicle, where he was asked his name. *Torres*, 347 Ill. App. 3d at 254, 807 N.E.2d at 657. The female passenger told Kurpiel there was no problem and she was not in danger. The *Torres* court stated that at this point, the purpose for the stop was over. However, the officers continued to hold them and ran a warrant check on the defendant, learning he had an outstanding warrant for driving under the influence. *Torres*, 347 Ill. App. 3d at 254, 807 N.E.2d at 657.

Applying *Harris*, the First District found the warrant check on the defendant converted the initial stop from a routine stop into an impermissible investigation of past wrongdoing. *Torres*, 347 Ill. App. 3d at 265, 807 N.E.2d at 666. The court emphasized that when the officers ran the warrant check on the defendant, they knew that the female passenger was not in danger, and therefore, the only reason for the officers' stop was resolved. Further, the officers had no additional suspicion of criminal activity, and therefore no justification warranted the prolonged detention.

■ Applying *Harris* to the facts in the instant case, we find that under these circumstances, Hainline did not have reasonable suspicion to detain defendant as a matter of law after the traffic stop was complete, and therefore his continued questioning of Roberts and his warrant check on defendant changed the fundamental nature of the stop into an impermissible investigation of past wrongdoing. We, therefore, reverse.

At issue in the instant case is whether the trial court erred in denying defendant's motion to suppress, finding (1) a reasonable person in Roberts' position would have believed he was free to leave after the warning citation was issued and Roberts' driver's license and insurance card were returned, and (2) defendant was not unconstitutionally seized when Hainline questioned Roberts after the traffic stop was complete.

Both parties acknowledge that the traffic stop was complete once Hainline returned Roberts' driver's license and insurance card and handed Roberts the warning citation. Defendant argues, however, that Hainline's later questions a second or two after the traffic stop was complete would make a reasonable person believe that the traffic stop was not complete and that he was not free to leave. We agree with defendant.

As in *Harris*, the check here converted the stop from a traffic stop into an investigation of past wrongdoing by not just Roberts but also his passengers, defendant and Bartz. Hainline's later warrant check on defendant, Roberts, and Bartz was not based upon a reasonable

suspicion. Nothing indicated any crime—only an undistinguishable smell, possibly of food, along with a friendly passenger and an unfriendly passenger. Upon request for identification of everyone in the car, Hainline recognized defendant as someone the West Central Illinois Drug Task Force had indicated was involved in illegal drug activity. Recent supreme court rulings, however, suggest that use of this rumored information by an officer is similar to further investigation of past wrongdoing. These facts are not enough to establish a reasonable, articulable suspicion of criminal activity to support a warrant check on defendant, Roberts, and Bartz. Therefore, the warrant check impermissibly prolonged the detention and changed the fundamental nature of the stop. Moreover, had Hainline allowed Roberts to leave at the completion of the traffic stop, Roberts would never have been asked for consent to search his vehicle, and the drugs would not have been discovered.

For these reasons, we are constrained to follow *Harris*. However, we feel compelled to recognize Justice Fitzgerald's comments in the dissent.

> "Conducting a non[ ]intrusive computerized check to determine if a judge has commanded the arrest of the passenger cannot reasonably be deemed a 'general inquisition.' The majority's conclusion to the contrary effectively creates a constitutional right to avoid justice.
> ***
> Under the court's present analysis, a warrant check will only comport with *Terry*'s scope requirement if it is either related to the purpose of the stop, or supported by a reasonable, articulable suspicion of criminal conduct. A warrant check, however, will rarely, if ever, relate to the purpose of a routine traffic stop—issuing a warning or citation for an observed traffic violation. Nor will facts necessarily develop during a routine stop providing a reasonable, articulable suspicion of criminal conduct. Although the present case involves a passenger, rather than the driver, the same *Terry* principles that govern the reasonableness of the officer's encounter with the passenger, also govern the reasonableness of the officer's encounter with the driver. Accordingly, under the majority's opinion, a driver can now legitimately argue that a warrant check 'change[s] the fundamental nature of the traffic stop' by converting the stop 'into an investigation of past wrongdoing.' " *Harris*, 207 Ill. 2d at 538-39, 802 N.E.2d at 233-34 (Fitzgerald, J., dissenting, joined by Thomas and Garman, JJ.), quoting *Harris*, 207 Ill. 2d at 528, 802 N.E.2d at 228.

Nonetheless, we must follow the supreme court's majority in *Harris*. Therefore, we reverse the trial court's denial of the motion to suppress and vacate defendant's conviction.

## III. CONCLUSION

For the reasons set forth above, we reverse the trial court's denial of defendant's motion to suppress and vacate the judgment of conviction.

Reversed and vacated.

APPLETON, J., concurs.

JUSTICE TURNER, dissenting:

In this case, I would find Deputy Hainline had a reasonable, articulable suspicion of criminal activity to support a warrant check on the passengers. Further, I would find a reasonable person would believe the traffic stop was complete and he was free to leave, thereby causing any further conversation to amount to a consensual encounter. Therefore, I respectfully dissent.

The majority concludes the facts here are not enough to establish a reasonable, articulable suspicion of criminal activity to support a warrant check on the passengers. I disagree. Deputy Hainline testified his suspicion that "something criminal" was going on was based on (1) movement of the occupants in the vehicle when he stopped the car, (2) defendant's staring straight ahead without eye contact with the officer, (3) the strong smell of an unidentified odor emanating from the car, and (4) his knowledge of defendant's involvement in illegal drug activity. While any one of these factors considered separately may not have been sufficient to establish reasonable suspicion, the trial court considers the totality of the circumstances in making its decision. *People v. Ortiz*, 317 Ill. App. 3d 212, 220, 738 N.E.2d 1011, 1018 (2000). Based on the totality of the facts, Hainline had reasonable suspicion based upon specific, articulable reasons to run a warrant check on the passengers. See *People v. Perez*, 288 Ill. App. 3d 1037, 1045, 681 N.E.2d 173, 178 (1997) ("Even where there may be an innocent explanation for each individual factor considered separately, the factors viewed in combination may constitute enough reasonable suspicion to warrant further detention in a given case").

Although I agree with the majority's comments regarding Justice Fitzgerald's well-reasoned dissent in *Harris*, I would find the supreme court's ruling in *Harris* does not require suppression of the evidence in this case. As Deputy Hainline had a reasonable articulable suspicion of criminal conduct, his warrant check on the passengers was reasonable and proper under the circumstances.

Moreover, I would find Deputy Hainline's questions to the driver

after the stop was complete amounted to a consensual encounter. In the trial court and now on appeal, defendant argues the encounter was not a consensual conversation and relies on our supreme court's ruling in *People v. Brownlee*, 186 Ill. 2d 501, 713 N.E.2d 556 (1999). In that case, police officers stopped a vehicle and approached the car on both sides. *Brownlee*, 186 Ill. 2d at 506, 713 N.E.2d at 559. The officers obtained the identities of the occupants and checked for and found no outstanding warrants. *Brownlee*, 186 Ill. 2d at 506, 713 N.E.2d at 559. The officers decided not to issue any citations, but they did agree to ask the driver for permission to search the car. *Brownlee*, 186 Ill. 2d at 506, 713 N.E.2d at 559. One officer returned to the driver his license and insurance card and explained that no citations would be issued. *Brownlee*, 186 Ill. 2d at 506, 713 N.E.2d at 559. Thereafter, the officers stood near the car's doors for about two minutes and said nothing. *Brownlee*, 186 Ill. 2d at 520, 713 N.E.2d at 565-66. After the pause, the officer asked the driver to search the vehicle, and the subsequent search revealed controlled substances. *Brownlee*, 186 Ill. 2d at 506-07, 713 N.E.2d at 559-60.

The supreme court found the traffic stop had concluded when one officer returned the license and insurance card to the driver and explained that no citations would be issued. *Brownlee*, 186 Ill. 2d at 520, 713 N.E.2d at 565. However, the officer's two-minute pause without saying anything to the driver constituted a show of authority, which would lead a reasonable person to conclude he or she was not free to leave without the officers "soon be[ing] in hot pursuit." *Brownlee*, 186 Ill. 2d at 520, 713 N.E.2d at 566.

In the case *sub judice*, the purpose of the stop was complete when Deputy Hainline returned to the driver his license and insurance card, issued a warning ticket for the traffic violation, and told him he was free to leave. Deputy Hainline prolonged the stop by asking the driver whether any open alcohol, loaded guns, or illegal drugs were in the car and requesting permission to search the vehicle. This case is distinguishable from *Brownlee*, however. Here, the trial court found that, in considering all the circumstances, a person in the driver's position would have believed he was free to leave. Deputy Hainline returned the driver's documents and told him he was free to leave, and the driver began to walk away, in contrast to the officers in *Brownlee*, who flanked the driver's car without saying anything for two minutes. The officer's actions here did not constitute a show of authority such that a reasonable person would not feel free to leave.

In discussing the United States Supreme Court's decision in *Ohio v. Robinette*, 519 U.S. 33, 136 L. Ed. 2d 347, 117 S. Ct. 417 (1996), the court in *Brownlee* noted "that an officer is always free to request

permission to search." *Brownlee*, 186 Ill. 2d at 515, 713 N.E.2d at 563. The court, however, found the problem in *Brownlee* was not that the officers requested permission to search the car, but "that the officers unconstitutionally detained the car and its occupants *before* requesting permission to search the car, and after the conclusion of the traffic stop." (Emphasis in original.) *Brownlee*, 186 Ill. 2d at 515, 713 N.E.2d at 563. Here, Deputy Hainline did not unlawfully detain the driver before he requested permission to search the vehicle.

The questions posed by Deputy Hainline amounted to a consensual encounter. "[L]aw enforcement officers do not violate the [f]ourth [a]mendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such questions." *Florida v. Royer*, 460 U.S. 491, 497, 75 L. Ed. 2d 229, 236, 103 S. Ct. 1319, 1324 (1983). Moreover, the person to whom the questions are asked may refuse to answer and may proceed on his way. *Royer*, 460 U.S. at 497-98, 75 L. Ed. 2d at 236, 103 S. Ct. at 1324.

When Deputy Hainline asked the driver whether he had any open alcohol, loaded weapons, or illegal drugs in the car, he could have refused to answer, returned to the car, fastened his seat belt, and driven away. Moreover, the questions were not of a nature that a person would feel his answer was required based on a show of authority. See *People v. Gherna*, 203 Ill. 2d 165, 179, 784 N.E.2d 799, 807 (2003) ("[A] consensual encounter will lose its consensual nature if law enforcement officers convey a message, by means of physical force or show of authority, that induces the individual to cooperate"). Hainline's questions did not violate the driver's fourth amendment rights, and the trial court correctly denied the motion to suppress.

It should be noted that the Illinois Supreme Court has steadfastly held that an unreasonable search and seizure analysis is the same whether the violation is alleged to have occurred under the fourth amendment (U.S. Const., amend. IV) or article I, section 6, of the Illinois Constitution (Ill. Const. 1970, art. I, § 6). See *Gonzalez*, 204 Ill. 2d at 224, 789 N.E.2d at 264 (Illinois Supreme Court construes the search and seizure language in section 6 in a manner consistent with the United States Supreme Court's fourth amendment jurisprudence); *People v. Bolden*, 197 Ill. 2d 166, 179, 756 N.E.2d 812, 820 (2001); *People v. Bull*, 185 Ill. 2d 179, 196, 705 N.E.2d 824, 833 (1998); *Fink v. Ryan*, 174 Ill. 2d 302, 314, 673 N.E.2d 281, 288 (1996); *People v. Mitchell*, 165 Ill. 2d 211, 219, 650 N.E.2d 1014, 1018 (1995); *People v. Lucente*, 116 Ill. 2d 133, 146, 506 N.E.2d 1269, 1274 (1987); *People v.*

*Tisler*, 103 Ill. 2d 226, 242, 469 N.E.2d 147, 157 (1984). Our courts of appeal have likewise interpreted search and seizure cases in this manner. See *People v. Reatherford*, 345 Ill. App. 3d 327, 334-35, 802 N.E.2d 340, 348 (2003); *People v. Edwards*, 337 Ill. App. 3d 912, 928, 788 N.E.2d 35, 49 (2002).

In *United States v. Drayton*, 536 U.S. 194, 200-01, 153 L. Ed. 2d 242, 251, 122 S. Ct. 2105, 2110 (2002), the Supreme Court reasoned that simply asking questions of a citizen is not a violation of the fourth amendment when the citizen is willing to listen. Here, no testimony indicated Deputy Hainline implied defendant must answer his questions or consent to a search.

Defendant's reliance on *People v. Goeking*, 335 Ill. App. 3d 321, 780 N.E.2d 829 (2002), is also distinguishable. In that case, the officer issued a verbal warning for a traffic violation, told the driver she was free to leave, and then asked if she had anything illegal in the car and for permission to search it. *Goeking*, 335 Ill. App. 3d at 322, 780 N.E.2d at 831. The appellate court, relying on *Brownlee*, affirmed the trial court's decision to grant the defendant's motion to suppress, focusing on the trial court's finding that the driver did not feel free to leave. *Goeking*, 335 Ill. App. 3d at 324, 780 N.E.2d at 831. The Second District indicated the evidence showed the defendant did not think she could leave the scene and felt she had no choice in the matter. *Goeking*, 335 Ill. App. 3d at 324, 780 N.E.2d at 832.

In this case, defendant does not challenge the trial court's finding that a reasonable person in the driver's position would feel free to leave. As stated earlier, the driver received his documents and was told he was free to go. The evidence presented at the hearing leads me to conclude that an objectively reasonable person would have felt free to do so. Therefore, I would affirm the trial court's judgment.